ESTATE OF ISAAC GOODMAN, DECEASED, ALAN S. GOODMAN, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24887. Promulgated December 19, 1951.

*Jesse A. Kline, Esq.,* and *Maurice J. Klein, Esq.,* for the petitioner.
*William H. Best, Jr., Esq.,* for the respondent.

OPINION.

RICE, *Judge:* This case presents a new facet of the tax problem that arises where property is involuntarily converted into cash. Petitioner's decedent received a condemnation award two days prior to his death. Except for the property purchased on October 20, 1944, the acquisition of which does not affect the tax problem presented, decedent was unable during this short interval to reinvest the proceeds in other property similar or related in service or use to the property so converted. Thereafter, decedent's personal representative acquired similar property and contends that decedent is entitled to the benefits of section 112 (f), I. R. C., in computing his tax liability for the taxable period ending at death. Section 112 (a), I. R. C., which states the general rule and section 112 (f), which states the exception here under consideration, are set forth in the margin.[1]

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

\*     \*     \*     \*     \*     \*     \*

(f) INVOLUNTARY CONVERSIONS.—If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related

Respondent contends that decedent is not entitled to the benefits of 112 (f) for the following reasons: (1) the section creates an exemption from taxation of income actually realized, and, while the section is to be liberally construed it cannot be expanded beyond its limitations; (2) the section contains no language specifically extending its benefits to the estate of a decedent who has realized a gain from an involuntary conversion and who has not completed the conversion during his lifetime; and (3) the original statutory provisions, relating to compulsory or involuntary conversion of property, sections 214 (a) (12) and 234 (a) (14), Revenue Act of 1921, specifically provide that *the taxpayer* shall expend the proceeds in the acquisition of similar property in order to be entitled to the benefits. In this connection respondent calls attention to the language of section 203 (b) (5), Revenue Act of 1924, which deleted the word "taxpayer" from the involuntary conversion provisions with the following explanation, H. Rept. No. 179, 68th Cong., 1st Sess., 1939–1 (Part 2) C. B. 241, 251:

Section 203:

. * * * * * * *

(5) Paragraph (5) corresponds to section 214 (a) 12 and 234 (a) 14 of the existing law. The existing law exempts from tax the proceeds from an involuntary conversion of property but fails to grant an exemption if the property is replaced in kind by the insurance company or similar person. The bill exempts the gain from an involuntary conversion whether the replacement is made by the taxpayer or by the insurance company.

* * * * * * *

Respondent argues that it is reasonable to infer from this amendment that Congress intended the tax benefits of the involuntary conversion section to be personal to the taxpayer. He asserts that the amendment eliminated "the taxpayer" from the statute for the sole purpose of allowing the taxpayer to reap the benefits when his insurance company made the replacement in his behalf. He submits, therefore, that petitioner's attempt to extend the tax benefits of the involuntary conversion section to the personal representative of a deceased taxpayer is unwarranted and transcends the intended scope of the statute.

In addition to the foregoing contentions, respondent points out that where property is involuntarily converted "into money which is forthwith in good faith * * * expended in the acquisition of other property similar or related in service or use to the property so

in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain shall be recognized, but loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized to the extent of the money which is not so expended (regardless of whether such money is received in one or more taxable years and regardless of whether or not the money which is not so expended constitutes gain).

converted," section 112 (f) provides that the proceeds must be expended "under regulations prescribed by the Commissioner with the approval of the Secretary, * * *." These regulations,[2] it is pointed out, repeatedly refer to "the taxpayer," and what *he* must do to obtain the benefits of section 112 (f). The regulations neither suggest nor intimate that other persons, such as, the executor, administrator, heirs, beneficiaries or devisees of "the taxpayer" can invoke section 112 (f) by reinvesting the proceeds or establishing a replacement fund after the death of the taxpayer. Respondent contends, therefore, that petitioner is attempting to extend the statute beyond its scope and without regard to the regulations issued pursuant to the provisions of the statute.

Petitioner counters with the contention that section 112 (f) does not mention the word "taxpayer" but speaks, so far as here applicable, as follows: "If property * * * is compulsorily or involuntarily converted * * * into money which is forthwith in good faith * * * expended in the acquisition of other property similar or related in service or use to the property so converted, * * * no gain shall be recognized * * *." It is contended that the money received from the award was reinvested, in accordance with the requirements of section 112 (f) and respondent's regulations, by the personal representative of the deceased taxpayer and that such compliance is sufficient. Petitioner argues that the strict construction requested by respondent is diametrically opposed to the decided cases, all of which, petitioner contends, hold that section 112 (f) is a relief provision entitled to a liberal construction. It is urged that it is immaterial who expends the "money" providing the expenditure is in the manner provided by the statute.

To illustrate its point that respondent's interpretation twists the statute meaning and tortures its intent, petitioner refers to that portion of the regulations quoted above which reads: "The taxpayer must trace the proceeds of the award into the payments for the property

---

[2] Regulations 103, section 19.112 (f)–1 and 2 and Regulations 111, section 29.112 (f)–1 and 2. The following paragraphs appear in both regulations:

    ＊    ＊    ＊    ＊    ＊    ＊    ＊

In order to avail himself of the benefits of section 112 (f) it is not sufficient for *the taxpayer* to show that subsequent to the receipt of money from a condemnation award *he* purchased other property similar or related in use. *The taxpayer* must trace the proceeds of the award into the payments for the property so purchased. It is not necessary that the proceeds be earmarked, but *the taxpayer* must be able to prove that the same were actually reinvested in such other property similar or related in use to the property converted. The benefits of section 112 (f) cannot be extended to *a taxpayer* who does not purchase other property similar or related in service or use, notwithstanding the fact that there was no other such property available for purchase.

    ＊    ＊    ＊    ＊    ＊    ＊    ＊

It is incumbent upon *a taxpayer* "forthwith" to apply for and receive permission to establish a replacement fund in every case where it is not possible to replace immediately. If an expenditure in actual replacement would be too late, a request for the establishment of a replacement fund would likewise be too late. [Emphasis added.]

so purchased." The question is then posed whether respondent would seriously stand on his interpretation if the facts were that the taxpayer, after making the reinvestment as required, died, and his personal representative tried to trace the proceeds of the award into the property so purchased. Petitioner insists that the word "taxpayer," as used in respondent's regulations, is the most general of terms, and, in effect, says that taxpayer means any person standing in the shoes of the decedent who complies with the statutory requirements regarding reinvestment of the proceeds. It is insisted further that respondent has no authority, by regulation, to provide that the benefits granted by section 112 (f) shall terminate with death, for his power to promulgate regulations is limited by the statute to directing the use of the proceeds to replace the property converted, under *Francis V. DuPont*, 31 B. T. A. 278, 283 (1934).

Both parties cite *Herder* v. *Helvering* (C. A. D. C., 1939), 106 F. 2d 153, certiorari denied 308 U. S. 617, which involved section 112 (f), Revenue Act of 1934. Herder and Williams were partners in a firm that owned rice milling property that was destroyed by fire. The firm received $50,000 under insurance policies in settlement of the loss, and immediately distributed it to the partners pro rata. The partners intended to reinvest the insurance proceeds in the purchase or establishment of another rice mill and to carry on the same partnership business. Within two weeks of the receipt of the proceeds Herder died before anything was accomplished and neither his heirs nor his personal representatives made such a reinvestment. Williams reinvested his proceeds in a rice mill similar to the one destroyed. The benefits of section 112 (f) were denied to Herder, but allowed to Williams, see our decision in 36 B. T. A. 934 (1937), and Herder's personal representative appealed.

In affirming our opinion, the Court of Appeals for the District of Columbia said, 106 F. 2d 153, 160:

If, as we view it, the proceeds is income to the taxpayer prior to his death, it is taxable in the period when it is received, and can only be relieved from taxation by compliance with sec. 112 (f), that is by actual reinvestment in similar property as required thereunder. The Board's action in applying sec. 112 (f) and its benefits to Williams in the present case and to Buckhardt in the case cited above [32 B. T. A. 1272] cannot have any effect on the taxability of George Herder's income in the absence of any reinvestment at all. Sec. 112 (f) is a liberal provision which may remove such income from a taxable status within the period when it was received. It is based upon the theory that taxation is deferred until a subsequent date, but only upon condition that there is a reinvestment of such income in similar property, which takes the basis for gain or loss of the property involuntarily converted. We are of the opinion that the proceeds of the insurance was taxable income received in the prior period, and, not having been reinvested, sec. 112 (f) cannot be availed of to avoid payment of taxes in the period the income was received. Upon the death of George Herder, the proceeds constituted a portion of his estate and could not be taxed as income derived by the estate.

Petitioner stresses our finding that Herder died "before anything was accomplished and neither his heirs nor personal representatives made such a reinvestment." 36 B. T. A. 934, 935. The inference is drawn from this finding that the personal representative had the right to make such reinvestments in order to comply with the statutory requirements. Petitioner argues that the Court of Appeals' opinion, quoted in part above, is based upon "the absence of any reinvestment at all," and upon the statement therein that, "The proceeds * * * not having been reinvested, sec. 112 (f) cannot be availed of to avoid payment of taxes in the period the income was received." The petitioner points out that the Court of Appeals at no place made any mention of the death of Herder as in any way bringing to an end the benefits of section 112 (f). Petitioner contends further that the Court of Appeals was not called upon to rule on the question here at issue, so that, while its decision is not controlling, it does show the interpretative thinking of the Court of Appeals on the subject.

In support of its interpretation of section 112 (f) petitioner cites the language used in some of our earlier decisions involving prototypes of section 112 (f), I. R. C. In *Washington Market Co.*, 25 B. T. A. 576, 584 (1932) we said: "As we view it, section 203 (b) (5) [Revenue Act of 1924] is a special or relief provision designed to prevent an inequitable incidence of taxation, * * *. Obviously, this section was intended not to penalize but to protect parties whose property may be taken on condemnation."

Petitioner also cites *Washington Railway & Electric Co.*, 40 B. T. A. 1249 (1939), where we granted the benefits of section 112 (f), Revenue Act of 1928, to a taxpayer operating a public utility, which made replacements in anticipation of an involuntary conversion of existing property into cash. We there conceded that the case was a close one but held that "any other conclusion would defeat the remedial intendment of the provisions in circumstances which we think were obviously intended to be embraced within it." (p. 1258).

Respondent stresses the first sentence in the above quote from the *Herder* case. The inference he draws therefrom is that the reinvestment of the proceeds of involuntary conversion must be made immediately and that with the exception of the one purchase on October 20, 1944, there was no reinvestment of proceeds by the decedent during the taxable period in which the proceeds were received. Respondent states that the *Herder* case did not raise directly the question of the limitations confronting a personal representative who attempts to comply with the provisions of 112 (f). He contends that the Court of Appeals' opinion indicates that death is an event which would "freeze" the rights of the parties where it found them and that with the advent of death different legal rights and liabilities come into existence. He

finds authority for this contention in that portion of the Court of Appeals opinion which reads: "Upon the death of George Herder, the proceeds constituted a portion of this estate and could not be taxed as income derived by the estate." Accordingly, respondent asserts, the *Herder* case does not inferentially extend the benefits of section 112 (f) to a decedent's personal representative, but that, on the contrary, the implications of that opinion favor his interpretation of the statute.

The respective positions of the parties on statutory construction, on the force and effect of respondent's regulations, and on the holding in the *Herder* case, *supra*, have been set forth in detail for the reason that they bring into sharper focus the effect, if any, that the death of the taxpayer has upon the interpretation of section 112 (f). Petitioner's theory, briefly, is that so long as the money is expended in the acquisition of property, as specified in the Code, it is immaterial whether the taxpayer individually expended the money during his lifetime or the money is expended by his personal representatives or his heirs after he is dead. The important thing is that the money has been reinvested as required by statute and the benefits should be forthcoming.

Petitioner's argument is appealing in that it seeks an equitable construction of section 112 (f) which will carry out the remedial purpose of Congress in enacting the statute. But we can not agree that section 112 (f) is applicable. It is plain that Congress did not intend section 112 (f) to apply to every case of involuntary conversion, for, if it had, the conditions governing its application would have been omitted. To extend the benefits of that section to the unusual circumstances of this case would be equivalent to legislating on our part, a field which is reserved to the Congress, and one in which we have no right to enter.

The stipulated facts show that the decedent received the money from the involuntary conversion on October 18, 1944. Facts have also been stipulated whereby the amount of decedent's gain on the involuntary sale of his property can be determined. With the money in hand, decedent had several avenues open to him, any one of which he could take and by his own voluntary action place a limit on the amount of tax he would be required to pay. For example, he could pocket the realized gain and pay the tax on the entire amount. Or, he could postpone the recognition of gain and thus escape tax if, under respondent's regulations, he reinvested the money in similar or related property in service or use, or established á replacement fund for such later reinvestment in similar or related property. Or, he could replace in part and subject himself to tax on the portion of the realized gain that was unexpended. *Francis* v. *DuPont, supra*.

Upon the death of Isaac Goodman, the money from the condemnation award became a part of the assets of the estate of the decedent, *Herder* case, *supra*, and any election available to him terminated with his death. New parties in interest came into being at his death, and the money was circumscribed with the claims of creditors, the expenses of administration, and the rights of the parties entitled to take under his will. That the proceeds had become a part of the decedent's estate was recognized by the transfer on October 23, 1944, of the cash from the "Isaac H. Goodman, Special Account, Alan S. Goodman, Attorney" to the account entitled "Estate of Isaac H. Goodman, Deceased." Recognition that there had been a change in the parties at interest in the money was also evidenced by the permission given the Girard Trust Co. by Alan S. Goodman, as executor of decedent's estate, to cash the $5,000 check he drew on the Special Account, as decedent's attorney in fact.

Upon decedent's death, his creditors, legatees, devisees, kin, and personal representative acquired legal rights with respect to his property theretofore nonexistent. Decedent's ability to create income, and to derive income from his investments, expired with him; and it is not illogical to hold that since death ended his ability to receive income, it also ended the opportunity afforded by section 112 (f) of postponing the recognition of gain. The general rule in 112 (a), which is held in abeyance if decedent complied with the statutory conditions, became operative, and the gain must be recognized. In other words, death ended the opportunity to postpone recognition with the same finality that it ended decedent's right to receive income.

Furthermore, this result reasonably follows in view of the consistent construction placed on section 112 (f) by respondent's regulations, the force and effect and the validity of which have been recognized by the decided cases. *Winter Realty & Construction Co.* v. *Commissioner* (C. A. 2, 1945), 149 F. 2d 567, affirming 2 T. C. 38. The statute states specifically that the award money is to be expended under regulations prescribed by the Commissioner with the approval of the Secretary. These regulations over a period of years have consistently interpreted 112 (f) as requiring *the taxpayer* to do certain specific things in order to obtain the benefits of section 112 (f). We are unwilling to hold that the term "taxpayer" as used in respondent's regulations means *any taxpayer*. In our opinion it is *the taxpayer* who realized the gain that must comply with the conditions imposed by the statute, if he is to secure the statutory benefits. *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435 (1934). Any other construction, as we have previously stated, would extend the statute beyond the plain import of its language, and would amount to judicial legislation. And

we can not forget that we are dealing with an exemption. *Twinboro Corporation* v. *Commissioner* (C. A. 2, 1945), 149 F. 2d 574.

Since the parties have agreed to allocate attorney fees in their computations under Rule 50,

*Decision will be entered under Rule 50.*

Reviewed by the Court.