ESTATE OF JACOB RESLER, DECEASED, CAMIL ROOS, LENORE R. ROOS AND FAY LIEBERMAN RESLER, EXECUTOR AND EXECUTRICES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FAY RESLER, ALSO KNOWN AS FAY LIEBERMAN RESLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 27983, 27984.    Promulgated January 2, 1952.

*Donald Lobree, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

OPINION.

TURNER, *Judge:* Three questions remain for decision: (1) Whether in the case of the Hotel Oakland property, the petitioner realized taxable gain in 1946, by reason of the receipt of his proportionate share of the $750,000 paid to the partnership at the time possession and title to the property was taken, or whether, by reason of litigation covering the partnership's claim for a greater amount, which litigation was terminated on April 27, 1948, by entry of a final judgment fixing the total amount of the award at $800,000, the entire amount of the gain is taxable in the latter year; (2) whether the $1,553,189.46 received in settlement of the condemnation litigation involving the 49 Fourth Street Building Company property was made up of $1,500,000, representing the price received for the property taken, and $53,189.46, representing rents covering the occupancy of the property by the Veterans Administration for the period from July 1, 1946, to October 2, 1946, or whether the full amount represented the price received for the property; and (3) whether the gain realized by the petitioners as a result of the condemnation and taking of the above properties is nonrecognizable gain, within the meaning of section 112 (f) of the Internal Revenue Code.

With reference to the Hotel Oakland, our first question is whether or not any part of the gain realized by the partnership from its condemnation was realized in 1946. The condemnation proceeding was instituted on June 15, 1946, and possession and title to the property were taken by the United States Government under date of July 15, 1946, at which time $750,000 was deposited by the Government as just compensation for the property, and that amount was paid to the partnership. As to that amount, there was no dispute, but the partnership took the position that the fair market value of the property so taken, at the time of taking, was greater than the $750,000 paid to and received by it, and instituted proceedings for the purpose of obtaining an added amount over and above the said $750,000. The cost of the property to the partnership, adjusted for depreciation, recording fees and the like, was $712,892.38. Final judgment was entered in the proceedings on April 27, 1948, under which the total award to the partnership was fixed at $800,000, plus interest. The interest and

the amount of the award over and above the $750,000 paid by the Government and received by the partnership in 1946, was paid to and received by the partnership in 1948.

The petitioners, citing and relying on *Lucas* v. *American Code Co.*, 280 U. S. 244; *United States* v. *Safety Car Heating & Lighting Co.*, 297 U. S. 88; *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417; and more particularly on *McGuirl* v. *Commissioner*, 74 F. 2d 729, take the position that since the amount of the award over and above the $750,000 was being litigated until April 27, 1948, the date of entry of final judgment, there was no closed transaction in 1946, and that the partnership realized no gain on the said property in that year, even though the amount received by the partnership was in excess of its cost basis.

It is the claim of the respondent, on the other hand, that as to the $750,000 received by the partnership in 1946, there was no dispute, and since the amount received for the property in 1946 exceeded the cost basis, of which excess Resler's distributive share was $3,092.30, the fact that litigation was pending whereby additional payments might be received and expenses incurred does not postpone recognition of the gain which was actually realized until a later year, when the litigation over the added claim was concluded.

The position of the respondent is, in our opinion, sound. As to the $750,000, there was no dispute. The Government not only admitted liability for that amount, but actually paid that amount into the court for the property and it was thereupon paid to the partnership. The partners received the money as their own and under a claim of right, and as to that payment the transaction was concluded. To the extent that it represented gain, it was taxable in 1946, when received. *North American Oil Consolidated* v. *Burnet, supra.* Although the exact question here was not decided in *Logan* v. *Burnet*, 283 U. S. 404, cited and relied on by the respondent, the treatment of the $750,000 contended for by him is in harmony with the rationale of the opinion of the Supreme Court of the United States in that case. The same is true of *Winter Realty & Construction Co.* v. *Commissioner*, 149 F. 2d 567. Any costs relating to the taking of the property and the payment of the $750,000 should, of course, be applied as an offsetting expense in determining the amount of the 1946 gain. The facts show that the litigation had to do with an amount over and above the $750,000 paid and received in 1946. The litigation was directed to that added claim. The costs of the litigation would accordingly be chargeable against the results thereof. *McGuirl* v. *Commissioner, supra*, and *Vim Securities Corporation*, 43 B. T. A. 759, cited with the *McGuirl* case, are not the same case. There no agreed amounts were paid by the condemning authority and received by the owners of the

property taken until the litigation was finally culminated. Similarly, *Luckenbach Steamship Co.*, 9 T. C. 662, and *Henry Hess Co.*, 16 T. C. 1363, are not in point.

It is the claim of the respondent that $53,189.46 of the amount paid by the Government in respect of the 49 Fourth Street property was for the use and occupancy of the premises by the Veterans Administration for the period from July 1, 1946, when the condemnation proceedings were instituted, to October 2, 1946, when title was transferred to the Government under a declaration of taking, and was, therefore, ordinary income and not a part of the capital gain realized from the sale of the property. In support of his contention, the respondent points to the claim made by the partnership for rent for the period mentioned, which claim, if allowed, would have brought the total to be paid by the Government, on the basis of its offer of $1,500,000 for the property itself, up to the amount actually paid. He cites and relies on *Raytheon Production Corporation* v. *Commissioner*, 144 F. 2d 110, affirming 1 T. C. 952, and *Nicholas W. Mathey*, 10 T. C. 1099, affd. 177 F. 2d 59.

The petitioners, on the other hand, contend that the entire amount received by the partnership was consideration for the property taken; that this contention is borne out by the settlement agreement presented to the court and the court order entered; and that the actual settlement, not the preliminary claims of the parties, is controlling. In support of their contention that the award, as shown by the final order of the court, may not be broken down and a portion thereof allocated as rent, the petitioners cite and rely on *Lapham* v. *United States*, 178 F. 2d 994, and *Marshall C. Allaben*, 35 B. T. A. 327.

This issue, we think, must be decided for the petitioners. The settlement actually made by the parties and effectuated by the court's order is controlling, and the cases cited and relied on by both parties so hold. See also *Kieselbach* v. *Commissioner*, 317 U. S. 100, and *Max Thomas Davis*, 46 B. T. A. 663. It is true that in the cases cited by the respondent, as well as in *Kieselbach* v. *Commissioner*, *supra*, it was concluded that a part of the award or settlement in each case was found to have been in the nature of earnings or profits and not of a capital nature, while in the cases cited by the petitioners, it was held that the transaction was capital in character, that the gain realized was capital gain and that no part was ordinary income. But in all of the cases cited, the conclusions were based on what was actually done in making the particular settlement or award.

In the instant case, the condemnation suit was instituted on July 1, 1946, but the property was not actually taken by the Government until it acquired title on October 2, 1946, upon a declaration of taking. In the meantime, an agency of the Government, the United States Veter-

ans Administration, had continued to use and occupy the premises. It had previously entered into the occupancy of the property on or about March 1, 1946, under a lease which fixed the rental at $17,729.82 a month. At or after the taking of the property on October 2, 1946, the Government representative made an offer of $1,500,000 to the partnership for the property. The owners refused the offer and claimed an additional amount to cover the rent which would have come to them under the lease for the period from July 1, 1946, to October 2, 1946. The Government representative denied any obligation on the part of the Government to pay any amount as rent for the use and occupancy of the premises for the period mentioned and countered with the proposition that the established and only allowance to cover value of the use of the property between the filing of the complaint and the deposit in court on the declaration of taking was an allowance of 6 per cent on the amount of the award. While the Government representative, reporting by wire to his superior, the Attorney General of the United States, did state that he had a firm offer to settle for $1,500,000 plus $54,000 representing 3 months' rental, total $1,554,000, and recommended immediate acceptance, the basis of the recommendation was that the figure of $1,554,000 was lower than any usable appraisal for the property. At no time did the Government admit or agree that any amount was owing as rent for the period mentioned. Counsel for the partnership and, under authority from the Attorney General, the Government representative thereafter entered into and filed with the court a "Stipulation for Judgment," to the effect that the partnership agreed to accept $1,553,189.46 "as full, adequate and just compensation for the taking of said property, and all damages resulting therefrom," and that final judgment might be entered in accordance with the terms of the agreement. The order of the court, in the same words, was entered on the 30th day of October 1947. Neither the stipulation of the parties nor the order of the court contained any provision making any allowance for rent or for 6 per cent on the award to cover the value of the use of the property from the date of the filing of the complaint to the date of the declaration of taking. Such being the facts, we think it plain and clear that regardless of the preliminary claims and contentions of the parties prior to the reaching of the settlement agreement, the settlement as made and carried out contained no allowance of any amount for rent or to cover the value of the use and occupancy of the property by the Veterans Administration during the 3 months' period, above mentioned. We accordingly find no basis in fact or in law for concluding that any part of the amount received by the owners of the property was other than consideration paid for the property taken. This conclusion, in our opinion, is in complete harmony with the cases above cited.

With respect to the gain realized on conversion of the above properties, the petitioners next claim that section 112 (f) of the Internal Revenue Code [2] is applicable and, by reason thereof, the said gain is not taxable. Briefly, section 112 (f) provides that in case property is compulsorily or involuntarily converted into money, the gain realized by reason of such conversion is not to be recognized for tax purposes, if the money is "forthwith in good faith, under regulations prescribed by the Commissioner * * *, expended in the acquisition of other property similar or related in service or use to the property so converted * * *, or in the establishment of a replacement fund."

The presence in this case of any issue as to the establishment of a replacement fund within the meaning of the statute was specifically disavowed by the petitioners at the time of the trial, their claim being that Resler at all times up to the date of his death "was proceeding forthwith in good faith" to reinvest the money in question in other property similar or related in service or use to the property converted, and having so "proceeded," the requirements of section 112 (f) were complied with.

The short answer to the contentions of the petitioners is that the money in question, except as to $50,000 has at no time been "expended," as prescribed by the statute, for other property similar or related in service or use to that which had been converted. *Paul Haberland*, 25 B. T. A. 1317, and *August Buckhardt*, 32 B. T. A. 1272, cited and relied on by the petitioners, are not in point. In those cases, the money resulting from the involuntary conversion of the property in question had, in fact, been expended for property similar or related in service or use, and the question there was whether or not, in view of the extended period of time elapsing between the conversion and the replacement, the facts and circumstances were such that the replacement expenditures had been made "forthwith," within the meaning of the statute. In no sense do they stand for the proposition that the requirements of the statute are met by efforts to expend the money, rather than actual expenditure thereof, in replacement of the property converted, however sincere the efforts may have been. Not only must the money actu-

---

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

* * * * * * *

(f) INVOLUNTARY CONVERSIONS.—If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain shall be recognized, but loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized to the extent of the money which is not so expended (regardless of whether such money is received in one or more taxable years and regardless of whether or not the money which is not so expended constitutes gain).

ally be expended for similar property but the expenditure must be made by the taxpayer whose property was converted and it is not even enough that purchases be made later by the taxpayer's estate, legatees or distributees. *Estate of Isaac Goodman*, 17 T. C. 1017. See also *Herder* v. *Helvering*, 106 F. 2d 153, affirming 36 B. T. A. 934. Compare *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435.

Here, the petitioners not only agree that the money was not and has not been expended "forthwith" or otherwise in the acquisition of similar property, but point out that, under California law, it may not now be so expended but must be held by Resler's executors for distribution. They seemingly think that in this situation they have successfully by-passed the statutory requirement that the money actually be expended for similar property. If we follow their reasoning, it is that Resler, up to the date of his death, "was proceeding forthwith" in an effort to expend the money for similar property and having so "proceeded" the gain realized upon the conversion was under section 113 (a) (9)[3] frozen, so to speak, in a nonrecognized state, since after Resler's death and by reason of the provisions of section 113 (a) (5) the basis of the property in his estate to the distributees thereof was its fair market value at the date of his death and such being the case nonrecognized gain to Resler or unrealized appreciation at the date of his death would not when realized by the distributees be taxable to them in any event.

The proposition, in our opinion, is so patently without merit or substance that we would be justified in merely saying that to state it is answer enough. In passing, however, it may be noted that the question here is whether gain realized by the petitioners in years prior to Resler's death is to be recognized and taxed to them in the years realized or is nonrecognizable under section 112 (f), which section states its own conditions for nonrecognition. As for section 113 (a) (9), it comes into play only after the effect and operation of the nonrecognition provisions of section 112 (f) have been determined and is in no way a causal force in bringing about nonrecognition. As for section 113 (a) (5), it has no relation to section 112 (f) by specific reference or implication and the conditions of nonrecognition pre-

---

[3] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property ; except that—

  \*      \*      \*      \*      \*      \*      \*

(9) INVOLUNTARY CONVERSION.—If the property was acquired, after February 28, 1913, as the result of a compulsory or involuntary conversion described in section 112 (f), the basis shall be the same as in the case of the property so converted, decreased in the amount of any money received by the taxpayer which was not expended in accordance with the provisions of law (applicable to the year in which such conversion was made) determining the taxable status of the gain or loss upon such conversion, and increased in the amount of gain or decreased in the amount of loss to the taxpayer recognized upon such conversion under the law applicable to the year in which such conversion was made.

scribed by section 112 (f) have no bearing whatever upon the statutory basis of the property of a decedent in the hands of his transferees or distributees or whether his said transferees or distributees are or are not taxable upon gain which they may thereafter realize on or from such property. Those likewise are matters which the statute has made provision for.

Furthermore, on the record here, we would be unable to say that Resler, even had he lived and at or about the time of his death had expended the money in question for similar property, would, under section 112 (f), have escaped recognition of the gain here in question. It is true he did do considerable shopping about with an apparent view to the purchase of rental property, but he actually made no purchase other than that in which the $50,000 mentioned above was involved. There seems to have been any number of properties on the market which were regarded by him as being reasonably comparable for his purposes to the properties converted and, so far as we are able to determine, the only reason one or more purchases were not made was that he was seeking a more favorable price than any of the owners were willing to accept. As to the subsequent fate of most of the properties considered by him, we are not advised, but as to several, it does appear that the prices sought by the owners were more in line with the market than were Resler's offers. Accordingly, we are even unable to say that within the spirit of the statute, Resler, at the time of his death, had proceeded "forthwith in good faith" in his efforts to acquire similar property as against a preference in the absence of a bargain to retain his money as such, even though such action did mean recognition of the realized gain.

*Decisions will be entered under Rule 50.*