44 WEST 3RD STREET CORPORATION, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 86024, 86025, 86164, 86165. Filed February 14, 1963.

*Abraham Kaplan, Esq.*, for the petitioners.
*Charles M. Greenspan, Esq.*, for the respondent.

OPINION.

DAWSON, *Judge:* Respondent determined a deficiency in income tax against 44 West 3rd Street Corporation for the year 1956 in the amount of $28,667.46.

Respondent has also determined transferee liabilities against the following petitioners for the years and in the amounts indicated:

| | Docket No. | Year | Amount |
| --- | --- | --- | --- |
| Mollie Wendell | 86024 | 1956 | $28,667.46 |
| David Wendell | 86164 | 1956 | 28,667.46 |
| Estate of Samuel Wendell, Deceased | 86165 | 1956 | 17,109.82 |

---

[1] Proceedings of the following petitioners are consolidated herewith: Mollie Wendell, Docket No. 86024; David Wendell, Docket No. 86164; and Estate of Samuel Wendell, Deceased, Steven M. Wendell and Robert B. Wilkes, Executors, Docket No. 86165.

The issues for decision are:

(1) Whether under section 337(a) of the Internal Revenue Code of 1954 the 44 West 3rd Street Corporation is entitled to exclude from its gross income for 1956 a long-term capital gain in the amount of $114,669.83 which it realized from the condemnation of certain real property by the city of New York.

(2) Whether the other three petitioners are, in turn, liable as transferees of the assets of the 44 West 3rd Street Corporation.

All of the facts were stipulated and are so found. It has also been stipulated that if this Court determines a deficiency against the corporation, then the other three petitioners, who were the sole stockholders that received the corporate assets upon its liquidation, are liable as transferees.

The 44 West 3rd Street Corporation (hereinafter referred to as the corporation) was organized under the laws of the State of New York on March 9, 1949. It filed its Federal income tax return for the taxable year 1956 with the district director of internal revenue for the second New York district.

In 1949 the corporation purchased a loft building located at 44 West 3rd Street in New York City. On August 5, 1955, the city of New York, pursuant to its condemnation law, took title to this property by an order of condemnation issued by the supreme court, New York County, index No. 40070/1955, in a proceeding known as "In the Matter of the Application of the City of New York, relative to acquiring title in fee simple absolute to real property required for Washington Square Slum Clearance Project." The final decree fixing the amount of the condemnation award for this property was entered on September 25, 1956. The city of New York paid the corporation on November 5, 1956, the sum of $242,263, plus interest in the amount of $12,133.06 for the period from August 5, 1955, to November 5, 1956. The interest was duly reported by the corporation in its Federal income tax return for the year 1956. But the corporation did not include in its income for that year the net gain on the condemnation.

On January 28, 1956, the corporation adopted a plan of liquidation. During January 1957, and prior to January 28, 1957, the corporation was dissolved and all its assets were distributed to its stockholders as follows, leaving the corporation insolvent:

| Name of stockholder | Percent of stock ownership | Received in dissolution |
|---|---|---|
| | *Percent* | |
| Mollie Wendell | 50 | $68,439.29 |
| David Wendell | 37½ | 51,329.47 |
| Samuel Wendell | 12½ | 17,109.82 |

By statutory notice dated January 26, 1960, the respondent determined a deficiency in the corporation's income tax liability for the year 1956 in the amount of $28,667.46. The notice of deficiency contained the following explanation:

Your income subject to tax for the taxable year 1956 has been increased in the amount of $114,669.83. This adjustment represents a long-term capital gain arising from the condemnation of property located at 44 West 3rd Street, New York, New York, computed as shown hereunder, which you improperly excluded from income subject to tax:

| | | |
|---|---|---|
| Amount of condemnation award | | $242,263.00 |
| Less: | | |
|     Selling expenses | $10,198.60 | |
|     Adjusted cost basis of property | 117,394.57 | 127,593.17 |
| Net long-term capital gain arising from condemnation | | 114,669.83 |

Section 337(a), I.R.C. 1954, provides that gains or losses shall not be recognized from the sale or exchange of property by a corporation if such sale or exchange occurs within 12 months from the date of the adoption of a plan of complete liquidation. The statute does not exclude gains from sales or exchanges which occur prior to the adoption of such a plan. Sec. 1.337–1, Income Tax Regs.

It is well established, and the parties agree, that condemnation proceedings are treated as "sales" for Federal tax purposes. *Hawaiian Gas Products, Ltd.* v. *Commissioner*, 126 F. 2d 4 (C.A. 9, 1942), affirming 43 B.T.A. 655, certiorari denied 317 U.S. 653. Cf. *Helvering* v. *Hammel*, 311 U.S. 504 (1949). Thus the real issue in this case is when the "sale" occurred. The respondent argues that the "sale" took place on August 5, 1955, the date the order of condemnation was entered which vested title in the city of New York. The petitioner corporation, on the other hand, contends that the effective date of "sale" was either September 25, 1956, when the final decree fixing the amount of the condemnation award was entered, or November 5, 1956, the date when the corporation received payment, both of which dates were within the 12-month period following the adoption of the plan of liquidation.

With respect to ordinary sales of realty we know that the sale occurs no later than the vesting of title and possession, or the right to immediate possession, in the purchaser. In Rev. Rul. 59–108, 1959–1 C.B. 72, it was pointed out that a condemnation sale differs from an ordinary sale in that title may vest and possession be transferred before a determination of price has been made. It goes on to say:

However, because of the difference in nature of a condemnation proceeding, it is the view of the Revenue Service that once title and possession have passed to the condemning authority, "negotiations" have been concluded for purposes of section 1.337–2(a) of the regulations.

Determining when a sale occurs in the condemnation of real property is complicated by the fact that condemnation statutes vary as to the procedure for the vesting of title in the condemning authority and the fixing of an unconditional obligation on its part to pay just compensation for the taking. Such is the case not only as between one state and another but usually even as regards different condemnation statutes within the state. The State of New York is a good example in that its general condemnation law follows the more traditional procedure under which title vests and the obligation to pay just compensation is fixed only at the end of the proceeding. Under the law of the City of New York, on the other hand, title vests upon the entry of the court order granting the City's application to condemn, which is generally before any determination of the just compensation to be paid, unless the Board of Estimate by a three-fourths vote has directed that title shall be vested upon a specified date after the date of the court order.

Contrary to the petitioners' arguments, we think the reasoning contained in the revenue ruling is sound and logical. Moreover, the ruling was cited with approval in *Wood Harmon Corporation* v. *United States*, 206 F. Supp. 773 (S.D.N.Y. 1962), affirmed on other grounds 311 F. 2d 918 (C.A. 2, 1963). That case likewise involved real property taken by the city of New York in connection with the very same Washington Square Slum Clearance Project. The District Court concluded that the "sale" within the meaning of section 337(a) took place on August 5, 1955. See also *Commissioner* v. *Kieselbach*, 127 F. 2d 359 (C.A. 3, 1942), affd. 317 U.S. 399 (1943), holding that a New York City condemnation proceeding terminated the owner's holding period at the time title vested in the city.

We are convinced that a condemnation "sale" for the purposes of section 337(a) occurs when title vests in the condemner in accordance with the procedures contained in the applicable condemnation laws. Consideration of local law in determining when title vests is necessary because it constitutes an integral part of the condemnation proceeding, just as much as the contract in an ordinary negotiated sale of realty. Consequently, we must here look to the provisions of the New York City Administrative Code. Section B15–36.0 provides that upon entry of the order of the court granting the condemnation the title to the property vests in the city unless the board of estimate by a three-fourths vote has directed a later date for such vesting of title. The same section also provides that upon vesting of title the city "shall immediately or any time thereafter take possession of such property without suit or other judicial proceedings." The date of the vesting of title is the date on which the fair market value of the property is subsequently determined. *Irving Trust Company* v. *Hughes*, 264 N.Y. Supp. 737. Under section B15–28.0 interest is payable on the award subsequently determined from the date of vesting of title. The order granting the application to condemn comes early in the proceeding and section B15–9.0 provides that it shall be entered

upon due proof of publication and posting of required notices and the filing of the petition for condemnation. Thus the vesting of title generally occurs before there is any determination as to the amount of compensation. But in any event the right to just compensation is unequivocally fixed on the date title vests in the city. *Ham* v. *State*, 185 N.Y.S. 2d 940.

When the condemnation award becomes fixed by the final decree or when the amount is received does not determine the effective date of the "sale." These factors merely determine whether a gain or loss is realized and the year in which it should be reported. The cases of *McGuirl* v. *Commissioner*, 74 F. 2d 729 (C.A. 2, 1935), certiorari denied 295 U.S. 748, and *Nitterhouse* v. *United States*, 207 F. 2d 618 (C.A. 3, 1953), certiorari denied 347 U.S. 943, relied upon by petitioners, turned solely upon a resolution of "when" or "how much" and are therefore not in point. We would distinguish the case of *Oahu Beach and Country Home, Ltd.*, 17 T.C. 1472 (1952), on its facts.

The argument is advanced that it was virtually impossible for the corporation to have complied with section 337(a) under these circumstances. We do not see it that way. A plan of liquidation could have been adopted at any time between January and August 5, 1955, during which period the corporation was prosecuting its suit to enjoin the condemnation.

Since we have concluded that the "sale" occurred when title vested in the city of New York and that date was prior to the adoption of the plan of liquidation, we hold that the corporation is not entitled to the benefit of section 337. Therefore, the net amount received is taxable as a long-term capital gain.

Having decided that the corporation is liable for the full deficiency asserted by the respondent, it follows that the other petitioners are liable as transferees.

*Decisions will be entered for the respondent in all four dockets.*