Mollie **WENDELL**, Petitioner-Appellant,
v.
**COMMISSIONER OF INTERNAL REVENUE**, Respondent-Appellee.

**44 WEST 3RD STREET CORP.**, Petitioner-Appellant,
v.
**COMMISSIONER OF INTERNAL REVENUE**, Respondent-Appellee.

David **WENDELL**, Petitioner-Appellant,
v.
**COMMISSIONER OF INTERNAL REVENUE**, Respondent-Appellee.

**ESTATE** of Samuel **WENDELL**, Deceased, Steven M. Wendell and Robert B. Wilkes, Executors, Petitioners-Appellants,
v.
**COMMISSIONER OF INTERNAL REVENUE**, Respondent-Appellee.

Nos. 98–101, Dockets 28282–28285.

United States Court of Appeals Second Circuit.

Argued Oct. 31, 1963.

Decided Jan. 13, 1964.

Abraham Kaplan, of Kaplan & Zabron-sky, New York City, for petitioners-appellants.

Morton K. Rothschild, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., and Lee A. Jackson and David O. Walter, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent-appellee.

Before SWAN, CLARK, and MARSHALL, Circuit Judges.

CLARK, Circuit Judge.

Petitioner 44 West 3rd Street Corp., a New York corporation, was the owner of a loft building located at 44 West 3rd Street in Manhattan, title to which was taken by the City of New York by order of condemnation on August 5, 1955. Subsequently, on January 28, 1956, the corporation adopted a plan of liquidation seeking to have the gain realized from the condemnation of its property classed as a nonrecognizable one under § 337(a), I.R.C.1954,[1] and within 12 months thereafter distributed all its property to its three stockholders, who join with the corporation as petitioners here. The final decree fixing the amount of compensation was entered on September 25, 1956, and payment was made on November 5, 1956. The Tax Court ruled that the "sale" here within the statutory meaning occurred when title passed on August 5, 1955, and the gain could not be excluded in computing the corporation's tax. 39 T.C. 809. These petitions for review therefore raise the narrow issue whether under the statute a "sale" oc-

1. "§ 337. *Gain or loss on sales or exchanges in connection with certain liquidations*

"(a) *General rule.*—If—

"(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

"(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period."

curred within 12 months of the adoption of a plan of complete liquidation of the taxpayer corporation when payment on condemnation was made by the condemnor within the period, although title had vested earlier.

■ There are obvious difficulties of interpretation in trying to link a condemnation proceeding to the ordinary sale, but we are required to do so here and should aim for a result consistent with the legislative purpose. See Hawaiian Gas Products v. C. I. R., 9 Cir., 126 F.2d 4, cert. denied 317 U.S. 653, 63 S.Ct. 48, 87 L.Ed. 525. The Internal Revenue Service takes the position that the sale "occurs" upon the order of the court, or other action, vesting title in the condemning authority and creating an obligation for it to pay just compensation. Rev.Rul. 59-108, 1959-1 Cum.Bull. 72. This is the view the Tax Court accepted in holding that the Commissioner correctly assessed a deficiency for the failure to include the long-term capital gain on the warehouse in the corporation's 1956 return.

■■ The position of the Service is an eminently reasonable one. Certainly as a general rule in ordinary sales of realty the sale "occurs" no later than the vesting of title and possession or the right to immediate possession in the purchaser. In this proceeding, the vesting of title gave New York City all the rights of ownership and possession. Thus the date it vests is the date as of which the fair market value of the property is fixed. So the former owner of the condemned property is paid interest on his award from that date on. Analogizing, as we must, this proceeding to the sequence of events in a sale, it is difficult to see how we could say the "sale" had not occurred. Further, this position has received substantial and uniform judicial support. See Wood Harmon Corp. v. United States, D.C.S.D.N.Y., 206 F.Supp. 773, aff'd on other grounds, 2 Cir., 311 F.2d 918; Dris-

coll Bros. & Co. v. United States, D.C. N.D.N.Y., 221 F.Supp. 603; Dwight v. United States, D.C.N.D.N.Y., 1963, 225 F.Supp. 933; Place Realty Corp., 21 T. C.M. 754. See also C. I. R. v. Kieselbach, 3 Cir., 127 F.2d 359, aff'd as to another issue, Kieselbach v. C. I. R., 317 U.S. 399, 63 S.Ct. 303, 87 L.Ed. 358, where the court held that for the purposes of computing the holding period of a capital asset the owner ceased to hold it at the date of the order vesting title in the condemning authority.

The gist of petitioners' argument for reversal is that it is difficult for corporations whose property is condemned to take advantage of § 337(a). There is some merit in their position, but we have not been made cognizant of any situations where a taxpayer who has property condemned cannot utilize the statute if he acts with sufficient celerity and acuity. See Note, 76 Harv.L.Rev. 780, 784 (1963). Further, the ruling adopted by the Internal Revenue Service—cited above—is one that can be applied expeditiously and with clarity to the diverse welter of condemnation statutes.

The taxpayers further attempt to rely on cases holding that gain from condemnation does not arise until the award is made. Patrick McGuirl, Inc. v. C. I. R., 2 Cir., 74 F.2d 729, cert. denied 295 U.S. 748, 55 S.Ct. 827, 79 L.Ed. 1693; Nitterhouse v. United States, 3 Cir., 207 F.2d 618, cert. denied 347 U.S. 943, 74 S.Ct. 638, 98 L.Ed. 1091, rehearing denied 347 U.S. 970, 74 S.Ct. 775, 98 L.Ed. 1111. The rule is a reasonable one and was applied in this case. But it does not bear directly on our question, since the Commissioner does not purport to use the date of the sale's occurrence for this purpose; nor is there any reason why he should.

Finding no considerations which would lead us to reject the weight of authority and the position of the Internal Revenue Service, we accordingly affirm the decisions of the Tax Court.*

---

* Because of the temporary absence from the country of Judge Marshall, Judge Clark's opinion was not filed prior to his death.