The Covered Wagon, Inc., et al. [1] v. Commissioner. Covered Wagon, Inc. v. Commissioner
Docket Nos. 452-63, 4171-63, 4172-63, 4173-63, 4174-63, 4175-63, 4176-63, 4177-63.
United States Tax Court
T.C. Memo 1965-79; 1965 Tax Ct. Memo LEXIS 250; 24 T.C.M. (CCH) 427; T.C.M. (RIA) 65079; April 5, 1965
Gordon D. Simons, 3304 France Ave., Minneapolis, Minn., for the petitioners. S. Clay Freed, for the respondent. DAWSON
Memorandum Opinion DAWSON, Judge: Respondent determined deficiencies against the following petitioners for the years and in the amounts indicated: Taxable year
Addition to tax
Docket
ended Sep-
Sec. 6651(a),
Name
No.
tember 30
Deficiency
I.R.C. 1954
The Covered Wagon, Inc.
452-63
1956
$69,315.23
$3,465.76
4175-63
1957
64,364.04
1958
4,414.33
1,103.58
Taxable year
ended
December 31
Fritz and Alice Benson
4171-63
1957
845.26
1958
659.25
1959
32.63
Estate of Hugo Benson
4172-63
1957
703.18
1958
669.90
Estate of James P. Ryan
4173-63
1957
2,302.82
1958
612.66
1959
90.87
*251 Respondent also asserted that the following petitioners are liable as transferees of The Covered Wagon, Inc., in the amounts indicated: Name
Docket No.
Amount
Grace D. Ryan, Transferee
4174-63
$111,496.85
Mina Benson, Transferee
4176-63
111,496.84
Fritz W. Benson, Transferee
4177-63
111,496.84
All of the issues in docket Nos. 4171-63, 4172-63 and 4173-63 have been either settled by stipulation or conceded by the petitioners. In docket Nos. 4174-63, 4176-63 and 4177-63 the petitioners admit their liability as transferees in the event any deficiencies are determined against The Covered Wagon, Inc. Certain issues raised by the pleadings in docket Nos. 452-63 and 4175-63 have been agreed to or conceded by the parties. All of these items will be given effect in the Rule 50 computations. The issues remaining for decision are: (1) Whether, under the provisions of section 337(a) of the Internal Revenue Code of 1954, The Covered Wagon, Inc., is entitled to exclude from its gross income the long-term capital gain it realized from the condemnation of certain real property by the United States Government. (2) Whether, if section 337(a) *252 does not apply, the gain is fully taxable to petitioner in the fiscal year ended September 30, 1957, or taxable in part in the fiscal year ended September 30, 1956, and in part in the fiscal year ended September 30, 1957. (3) Whether The Covered Wagon, Inc., is entitled to depreciation deductions on the condemned property after July 6, 1956. (4) Whether The Covered Wagon, Inc., is entitled to a depreciation deduction on certain restaurant equipment sold at a gain during the fiscal year ended September 30, 1957. (5) Whether The Covered Wagon, Inc., is entitled to net operating loss deductions for the fiscal years ended September 30, 1956 and 1957. (6) Whether assessment of the deficiency against The Covered Wagon, Inc., for the fiscal year ended September 30, 1956, is barred by the statute of limitations. All facts have been stipulated by the parties. Such facts, together with the stipulated exhibits, are incorporated herein by this reference. Those facts necessary to an understanding of our inquiry are set forth in this opinion. The Covered Wagon, Inc. (hereafter called petitioner) was incorporated under the laws of Minnesota on May 23, 1934. Petitioner used the accrual *253 method of accounting. For the fiscal years ended September 30, 1956 and 1957, petitioner filed its Federal corporate income tax returns with the district director of internal revenue for the district of Minnesota. Petitioner has not filed any corporate income tax return for any period subsequent to the fiscal year ended September 30, 1957. All of the individual petitioners also filed their Federal income tax returns for the years 1957, 1958 and 1959 with the district director of internal revenue for the district of Minnesota. Petitioner operated a tavern and cafe in the City of Minneapolis. During 1956 the petitioner and eight others were informed that certain property they owned would be needed as a site for an addition to a Federal office building. On July 6, 1956, the United States instituted a condemnation proceeding in the United States District Court for the District of Minnesota, Fourth Division, against the real estate owned by the petitioner. The case was assigned Civil No. 5505 and the following documents were filed with the Court: (1) a "Letter of Authority" on the condemnation; (2) a "Complaint in Condemnation"; and (3) a "Declaration of Taking." At that time *254 there was deposited with the Court the sum of $446,501, estimated by the United States to be just compensation for the condemned property, of which $200,000 was attributable solely to petitioner's property, known as "Parcel 8." On August 7, 1956, the United States filed a Notice of Condemnation with the District Court and served a copy on the petitioner. Petitioner did not file an answer challenging the taking, but contested only the amount of compensation it should receive for its property. On January 2, 1957, petitioner's stockholders adopted a plan of complete liquidation which provided, inter alia, that the "transfer of all the property and assets of this corporation shall be completed within one year hereafter or by December 31, 1957." An Appearance, Waiver and Petition for Disbursement of Award were filed on January 30, 1957. The parties stipulated and agreed to the immediate payment of 90 percent of the sum deposited with the Court for petitioner. On January 31, 1957, the Court ordered payment to petitioner of $180,000 and that amount was paid on February 5, 1957. On April 24, 1957, a jury determined the value of petitioner's property as of July 6, 1956, to be $305,500. *255 Interest was added at 6 percent from July 5, 1956, to May 15, 1957, by the judgment entered on May 8, 1957, which provided in pertinent part: That upon the filing of the Declaration of Taking on said date [July 6, 1956] and the deposit into the Registry of this Court of the sum of $200,000.00 as the estimate of the fair and just compensation for the taking of the lands herein condemned, the United States of America was vested with an estate and title in full fee simple in and to the lands described therein as Parcel No. 8, a detailed description of which is contained in the Complaint in Condemnation and Declaration of Taking herein. The period during which interest was to run was later extended to June 26, 1957. Petitioner was paid $20,000 on May 14, 1957, and a final payment of $111,743.40 on June 26, 1957. The expenses, totaling $24,854.72, incurred by petitioner in connection with the condemnation of its property were both accrued and paid during the fiscal year ended September 30, 1957. The adjusted basis of the condemned property on July 6, 1956, was $28,239.10. Section 337(a), Internal Revenue Code of 1954, provides that gains or losses shall not *256 be recognized from the sale or exchange of property by a corporation if such sale or exchange occurs within 12 months from the date of the adoption of a plan of complete liquidation. The statute does not exclude gains from sales or exchanges which occur prior to the adoption of such a plan. Section 1.337-1, Income Tax Regs.
Since it is clear that condemnation proceedings are treated as "sales" for Federal tax purposes, Hawaiian Gas Products, Ltd., 43 B.T.A. 655 (1941), affirmed 126 F. 2d 4 (C.A. 9, 1942), the first and central issue in these cases is when the "sale" occurred. Petitioner argues that the "sale" took place on either June 26, 1957, when the final payment was made on the condemnation award because it was on that date that title to the property vested in the United States, or on some other date subsequent to January 2, 1957. The crux of petitioner's argument is that we must look to the law of Minnesota to determine when title vested in the United States. Respondent, on the other hand, takes the position that the effective date of "sale" was July 6, 1956, because under the applicable Federal condemnation statute title *257 vested in the United States when the declaration of taking was filed in the District Court. We agree with respondent. In 44 West 3rd Street Corporation, 39 T.C. 809 (1963), affirmed sub nom. Wendell v. Commissioner, 326 F. 2d 600 (C.A. 2, 1964), this Court stated that a condemnation "sale" for the purposes of section 337(a) occurs when title vests in the condemning authority in accordance with the procedures contained in the "applicable condemnation laws." Here the Federal condemnation statute controls. See Estate of Jacob Resler, 17 T.C. 1085, 1091-1092 (1952), where the parties to such a transaction were deemed to have acceded to its provisions. Cf. 44 West 3rd Street Corporation, supra.The petitioner's property was condemned under the provisions of the Declaration of Taking Act, 40 U.S.C. Sec. 258. Section 258a provides: Upon the filing said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands in fee simple absolute, or such less estate or interest therein as is *258 specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto; * * * The case of Drake v. City of St. Paul, 65 F. 2d 119 (C.C.A. 8, 1933), relied on by petitioner, is clearly distinguishable because it did not involve the Declaration of Taking Act but the Conformity Act of August 1, 1888, which provided for conformity to state practice and pleading. This procedure has been superseded by Rule 71A, Federal Rules of Civil Procedure. The United States District Court for the District of Minnesota, in Civil No. 5505, entered its judgment holding that the title to petitioner's property vested in the United States on July 6, 1956. On the authority of that determination and 44 West 3rd Street Corp., supra, it follows that the "sale" occurred on July 6, 1956. Since that date was prior to the adoption of the plan of liquidation, we hold that petitioner is not entitled to claim the benefit of section 337. Consequently, the gain is taxable. Next we must consider when the *259 gain was realized, i.e., in what year or years is it taxable? For protective purposes the respondent treated the gain as fully taxable in each of the fiscal years ended September 30, 1956 and 1957. On brief, however, respondent contends that $200,000 should be considered as received during the fiscal year 1956 and $105,000 as received during the fiscal year 1957 because the petitioner "could have made application for and received the entire $200,000 at any time subsequent to July 6, 1956." Respondent cites Estate of Jacob Resler, supra, as supporting this contention. On this issue the petitioner argues that the entire gain is taxable in the fiscal year ended September 30, 1957, and places his reliance on Patrick McGuirl, Inc. v. Commissioner, 74 F. 2d 729 (C.A. 2, 1935), affirming a Memorandum Opinion of this Court, certiorari denied 295 U.S. 748 (1935); Nitterhouse v. United States, 207 F. 2d 618 (C.A. 3, 1953), certiorari denied 347 U.S. 943 (1954); and Wendell v. Commissioner, supra. On the basis of McGuirl, supra, we think the petitioner is correct. Moreover, the Court of Appeals said *260 in the Nitterhouse case (207 F. 2d at p. 620): However, we do not think that this deposit was available to the taxpayer at his will only. To withdraw it would have required a court order. And to get that order the petitioner would have to show that he had a clear title to the land free from tax and judgment liens and so on. It is not enough that the taxpayer might have got the money in 1944 had he applied for it and made the requisite showing. He did not apply for it and no requisite showing by him was made. Therefore, he was not in a position to show that he was unqualifiedly entitled to the money. The Estate of Jacob Resler, supra, is not in point. In that case we held that the gain was taxable in 1946, the year in which it was actually received by the taxpayer. That is not so here. Petitioner got nothing in the fiscal year 1956; nor was it "unqualifiedly entitled" to any money in that year under the rationale of Nitterhouse because the Court order [2] directing payment to petitioner was not entered until January 31, 1957. See also Driscoll Bros. & Co. v. United States, 221 F. Supp. 603 (N.D.N.Y. 1963). Therefore, we sustain petitioner *261 on this issue and hold that all of the gain is taxable in the fiscal year ended September 30, 1957. For both of the fiscal years 1956 and 1957 petitioner claimed depreciation deductions with respect to its building, building equipment and well taken in condemnation. In his notices of deficiencies respondent determined that depreciation deductions were not allowable as to such assets after July 6, 1956, since title passed to the United States on that date. We agree. Petitioner did not have a depreciable interest in the property after that date. Accordingly, we sustain respondent's adjustments. Petitioner sold certain restaurant equipment in August 1957 in a transaction not connected with the condemnation proceedings. The sales price of these assets was $21,151.20. In its return for the fiscal year ended September 30, 1957, petitioner claimed depreciation deductions on the restaurant equipment as follows: *262 Salvage
Adjusted basis
Depreciation
Equipment
Life
Rate
value
9-30-56
claimed 9-30-57
Kitchen
8
12 1/2%
0
$12,312.70
$2,319.89
Bar
5
20%
0
234.60
104.60
Cafe
10
10%
0
298.67
105.22
General
10
10%
0
3,255.24
824.56
Totals
$16,101.21
$3,354.27
Respondent disallowed the deduction in his notice of deficiency in the following manner: It is determined that depreciation claimed on kitchen equipment, bar equipment, cafe equipment and general equipment is not allowable for the reason that depreciation claimed and allowed in prior years reduced the basis of such property below a reasonable salvage value. Therefore, your taxable income is increased by the amount of $3,354.27. In C. L. Nichols, 43 T.C. 135 (1964), we said: * * * [Where] respondent, pursuant to a statutory notice of deficiency, disallows a depreciation deduction in the year of sale because the sales price exceeds the estimate of salvage value, respondent has made a prima facie case that excessive depreciation has been claimed and that no depreciation is allowable in the year of sale. At that point, petitioner, in order to establish *263 that he is entitled to some or all of the depreciation claimed, must show that estimates used by him in his depreciation schedule were correct and that the gain realized on the sale resulted from market appreciation. * * * See also Bell Lines, Inc., 43 T.C. 358 (1964), and L. M. Lockhart, 43 T.C. 776 (March 15, 1965). Petitioner has failed to introduce any evidence on this issue. Thus, we have no way of knowing whether its estimates of useful life and salvage value are correct, or whether the gain resulted from market appreciation. Since the petitioner has failed to meet its burden of proof, depreciation deductions claimed on the restaurant equipment are disallowed. For the fiscal years ended September 30, 1956 and 1957, petitioner claimed net operating loss deductions in the respective amounts of $64,823.47 and $104,869.47. These deductions were disallowed in full by respondent in the notices of deficiencies. The parties have stipulated the following net income or loss of petitioner: Fiscal year ended
Amount of net income
September 30
(or loss)
1950
$14,133.41
1951
(23,660.29)
1952
2,885.51
1953
(22,765.43)
1954
(1,779.27)
1955
(19,204.54)
*264 In view of the fact that we have determined the items of income and deduction which are in dispute for the fiscal years ended September 30, 1956 and 1957, the parties will now be able to arrive at the correct amounts of the net operating loss deduction for the years in controversy in the Rule 50 computations. The usual three-year period for assessing a deficiency against the petitioner for the fiscal year ended September 30, 1956, expired before issuance of the notice of deficiency covering that year. Consequently, the respondent, who relies on the provisions of section 6501(e)(i)(A) of the 1954 Code, had the burden of proving that petitioner omitted an amount of gross income in excess of 25 percent of the amount of gross income reported ($534,442.50) on its tax return for such year. Having concluded that the gain realized by petitioner from the condemnation award is fully taxable in the fiscal year ended September 30, 1957, it follows that there has not been a 25 percent omission from reported gross income in the fiscal year ended September 30, 1956, and therefore the assessment of a deficiency for such year is barred by the provisions of section 6501(a) of the 1954 Code. To reflect *265 the conclusions reached herein and to provide for the agreements and concessions of the various parties on other issues, Decisions will be entered under Rule 50. Footnotes
1. The proceedings of the following petitioners are consolidated herewith: Fritz W. and Alice Benson, Docket No. 4171-63; Estate of Hugo W. Benson, Deceased, Urban L. Plain, Administrator, and Mina Benson, Docket No. 4172-63; Estate of James P. Ryan, Deceased, Grace D. Ryan, Administratrix, and Grace D. Ryan, Docket No. 4173-63; Grace D. Ryan, Transferee, Docket No. 4174-63; The Covered Wagon, Inc., Docket No. 4175-63; Mina Benson, Transferee, Docket No. 4176-63; and Fritz W. Benson, Transferee, Docket No. 4177-63.↩
2. 40 U.S.C., Sec. 258a provided, in part, as follows: Upon the application of the parties in interest, the court may order that the money deposited in the court, or any part thereof, be paid forthwith for or on account of the just compensation to be awarded in said proceeding.↩