**WOOD HARMON CORPORATION,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

United States District Court
S. D. New York.
May 24, 1962.

Keogh, Green & Brennan, New York City, for plaintiff. Bernard A. Green, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, for United States. Robert Arum, Asst. U. S. Atty., of counsel.

DAWSON, District Judge.

In this action, which was brought by the plaintiff to obtain a tax refund, both parties have moved for summary judg-

ment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C. The essential facts of the case have been stipulated to by the parties and are not in ·dispute.

The plaintiff is the transferee of United Cities Realty Corporation (hereinafter called United), a New York corporation which was formerly the owner of an undivided five-sixths interest in premises commonly known as 71 Washington Square South in the City of New York (hereinafter called the Washington Square property). On or about January 14, 1955, the City of New York filed a petition ·in the New York Supreme Court commencing condemnation proceedings against the Washington Square property, pursuant to the provisions of Title B of Chapter 15 of the Administrative Code of the City of New York under the Charter of the City of New York.

On July 18, 1955, at a special meeting of United's Board of Directors, it was reported that by reason of the condemnation proceedings United would probably sustain a substantial liability for capital gain tax and it was proposed that the Board consider the advisability of recommending the dissolution and liquidation of United to enable it to take advantage of Section 337 of the Internal Revenue Code of 1954.[1] It was thereupon resolved to call a special meeting of stockholders to be held on August 8, 1955 "for the purpose of considering a proposal of dissolution of the corporation and the adoption of a plan of liquidation of its assets." At the meeting of stockholders, held on August 8, 1955, the stockholders duly adopted a resolution to liquidate United. In the meanwhile, however, on August 5, 1955, three days prior to the stockholders meeting, an ex parte order was entered in the New York

Supreme Court proceeding, pursuant to provisions of the above-mentioned Administrative Code, which vested legal title to the Washington Square property in the City of New York. Title to the Washington Square property therefore passed to the City of New York prior to the approval of the plan of liquidation by United's stockholders.

After the adoption of the plan of liquidation by United's stockholders, the directors proceeded to sell United's remaining assets (other than the Washington Square property) which included ten separate parcels of real property and a stock interest in a real estate corporation. On its return for the year 1955 and on the return which it filed covering January 1, 1956 to July 30, 1956, United took the position that the gains from the sale of the foregoing assets were not subject to tax, pursuant to Section 337. This determination by United was apparently not contested by the Government.

With respect to the Washington Square property, which had been condemned by the City of New York on August 5, 1955, United received the sum of $225,000 on March 8, 1956 as an advance payment on account of the then undetermined amount of the award to United for its interest in the condemned property. This initial payment exceeded United's cost basis for the Washington Square property by $45,532.68. This amount was reported by United on the return it filed for the period January 1, 1956 to July 30, 1956 as a non-taxable gain under Section 337.

On June 28, 1956 United assigned to the Commercial State Bank all of its right, title and interest in any further payments to be made by the City of New York relating to the condemnation of the

---

1. Section 337(a) (26 U.S.C. § 337(a)) provides:

"(a) If—

"(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

"(2) within the 12-month period beginning on the date of the adoption of such

plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period."

Washington Square property. Sometime prior to July 30, 1956, United, pursuant to agreement, delivered to the Commercial State Bank all its assets, other than $2,436.93 which it retained to pay liabilities.

On September 29, 1956, the New York Supreme Court, by decree entered in the condemnation proceeding fixed the value of this entire property at $425,000 and on December 3, 1956 the City of New York delivered to United and to the owner of the other one-sixth interest in the Washington Square property four warrants totaling $169,557.81. United's interest in the warrants was $141,298.28, of which $129,166.67 was attributable to the condemnation of the property and $12,131.51 represented interest paid by the City of New York.

On October 14, 1960 the Commissioner of Internal Revenue levied against the plaintiff as transferee of United an assessment of $54,874.08 (consisting of a tax of $44,302.72 and deficiency interest of $10,571.36) based on the gain allegedly realized by United on the condemnation of the Washington Square property. The assessment was paid by the plaintiff in order to avoid having the Government make a deficiency assessment against United's individual stockholders.

The plaintiff contends that the assessment of tax imposed by the Government on the proceeds from the condemnation of the Washington Square property is not authorized because of the provisions of Section 337 of the Internal Revenue Code of 1954. In particular, the plaintiff makes the following three arguments:

(1) The decree entered by the City of New York in its condemnation proceedings on August 5, 1955 did not constitute a "sale" within the meaning of Section 337 prior to the adoption of the plan of complete liquidation on August 8, 1955, so as to prevent the condemnation from qualifying as a non-recognizable gain under that section.

(2) The assessment is invalid because United was not in existence in December, 1956 when the final proceeds from the condemnation were received and "recognized" for tax purposes.

(3) The assessment covered only the period from January 1, 1956 to July 30, 1956 and therefore did not include the date when the gain was recognized.

As to the plaintiff's first contention, it seems clear that the "sale" of the Washington Square property, within the meaning of Section 337, must be considered to have taken place on the date of condemnation, August 5, 1955, which was prior to the adoption of the plan of complete liquidation. Title B of Chapter 15 of the Administrative Code of the City of New York, pursuant to which the Washington Square property was condemned, provides:

"§ B15–36.0 *Vesting of title; date of; seizin; possession.*—a. The title to any piece or parcel of the real property authorized to be acquired hereunder for any public improvement or for any public purpose shall be vested in the city upon the entry of the order granting the application to condemn  *  *  *.

\*     \*     \*     \*     \*     \*

"c. The city  *  *  *  upon the acquisition of title to such real property will have jurisdiction thereof, shall immediately or any time thereafter take possession of such property without suit or other judicial proceedings."

Normally, of course, it cannot be disputed that a sale of real property and the transfer of title would be synonymous. See, e. g., Geyer v. Bookwalter, 193 F. Supp. 57, 62 (W.D.Mo.1961).

In Rev.Rul. 59–108, 1959–1 Cum.Bull. 72, the Commissioner specifically held that under the New York City Code the condemnation of property which immediately vested title in the city was a sale of property, within the meaning of Section 337, on the date such property was condemned. The ruling, moreover, is supported by the case of Commissioner of Internal Revenue v. Kieselbach, 127 F.2d 359 (3d Cir. 1942), aff'd 317 U.S. 399, 63 S.Ct. 303, 87 L.Ed. 358 (1943), which

held that a New York City condemnation proceeding terminated the owner's holding period at the time when title was vested in the city.

The plaintiff relies upon the cases of McGuirl v. Commissioner, 74 F.2d 729 (2d Cir.), cert. denied, 295 U.S. 748, 55 S.Ct. 827, 79 L.Ed. 1693 (1935) and Vim Securities Corp. v. Commissioner, 43 B.T.A. 759 (1941). These cases, however, relate not to the question of when a sale occurs in a condemnation proceeding but when gain is recognized, which is an entirely different matter.

This Court concludes, therefore, that the "sale" within the meaning of Section 337 took place on August 5, 1955, when title to the property was vested in the City of New York.[2]

■ Plaintiff's second contention is that United's existence for tax purposes terminated on July 30, 1956, the date it transferred its assets (less assets retained to pay liabilities) to Commercial State Bank, or, in any case, on October 23, 1956, when the Certificate of Dissolution was filed with the Secretary of State of New York. Since the amount of the condemnation award was not actually paid by the City until December 3, 1956, the plaintiff argues that United received no taxable income during its legal existence and therefore no assessment can be made against it or its transferees for a tax which it could not be required to pay.

The Government contends, on the contrary, that United was in existence for tax purposes for the entire year 1956 and was properly taxable on the amounts paid to it by the City of New York on December 3, 1956. The Government's contention is supported by the case of J. Ungar, Inc. v. Commissioner, 244 F.2d 90 (2d Cir. 1957). The Ungar case held that where a corporation in the process of dissolution retained some assets to pay its debts, its existence for tax purposes continued during the period of such retention. The decision in that case relied on Section 29.52–1 of Regulation 111 of 1939 (now Regulation 1.6012–2(a) (2)) which provided that a corporation not in existence throughout an annual accounting period was required to make a return for that fractional part of a year when it was in existence and provided that "a corporation is not in existence after it ceases business and dissolves, *retaining no assets * * *.*" (Emphasis added). The Ungar case held that since the corporation had retained some assets to pay its liabilities its existence was not terminated and it was liable for tax on the proceeds of previously earned commissions which it had assigned away.

The decision in the Ungar case is persuasive on the question of United's continued existence. As of January 1, 1957 United still maintained a bank account in excess of $1,000. The warrants for the condemnation award were made to United's order and were endorsed by its Vice President. The cases relied on by the plaintiff, Commissioner of Internal Revenue v. Henry Hess Co., 210 F.2d 553, 559 (9th Cir. 1954) and Cold Metal Process Co. v. Commissioner, 247 F.2d 864, 874 (6th Cir. 1957) are distinguishable in that in each of those cases no assets whatsoever had been retained. See Farer, Corporate Liquidations: Transmuting Ordinary Income Into Capital Gains, 75 Harv.L.Rev. 527, 535–40 (1961).

■ The final point in petitioner's argument is that the assessment was invalid because it covered only the period from January 1, 1956 through July 30, 1956, whereas the recognized gain, if any, took place at the time of the payment of the award on December 3, 1956. It is true that the notice of assessment served by the Government on a standard short form, Statement of Tax Due (Form

---

**2.** It may be noted that the only other dates on which a "sale" might possibly have been found to have taken place would be the date when the amount of the award was fixed or the date on which it was paid. Both these dates are *after* the 12-month period following the adoption of the plan of liquidation and therefore Section 337 would not apply in any event.

17–A), had typed on it "Addl FYE 7/30/56" apparently meaning "additional for year ending July 30, 1956." It is also true that the assessment of tax similarly referred to a deficiency for the "year ended July 30, 1956." However, since this period was the final taxable period designated by the plaintiff on its return, the references on the Government forms were merely directed to that return and were not a concession by the Government that tax was only being assessed through July 30, 1956.

The assessment on its face recites that the tax liability is for capital gains resulting from the condemnation of the Washington Square property. Obviously, the very essence of the Government's claim for the tax was based on the payment of the award by the city on December 3, 1956 as all parties were aware. The complaint itself recognized that the tax was "assessed against United for the entire year of 1956." Under the circumstances, the references to July 30, 1956 appearing in the assessment served by the Government cannot be taken to be a waiver by the Government of a claim to taxes for the balance of the year 1956. There is no evidence that in paying the amount of the assessment the plaintiff was in any way misled by the description of the taxable period and therefore the variance in dates, if any, may be disregarded. See Scofield's Estate v. Commissioner, 266 F.2d 154, 167 (6th Cir. 1959).

This is, in many respects, an unfortunate case for the taxpayer. If the condemnation decree had been entered three days later, then the "sale" within the meaning of Section 337 clearly would have occurred within the 12-month period following the adoption of a plan of complete liquidation and the award would qualify for tax exemption. Also if United had not retained the limited amount of $2,436.93, but had disposed of all of its assets, it would, under the principles of the Hess case, possibly not have been subject to tax at the time when the award was paid on December 3, 1956. Nevertheless the facts being what they are, the plaintiff is unable to qualify the condemnation award under the provisions of Section 337. The Court may not alter the provisions of this section to suit the facts of the plaintiff's case. If this sort of case is to qualify under Section 337 Congress must provide for it. Since the plaintiff has failed to demonstrate that the condemnation and payment of the award qualified for tax exempt treatment under Section 337 it must fail in this action for a tax refund.

The motion of the plaintiff for summary judgment is denied and the motion of the defendant for summary judgment in its favor is granted.

So ordered.