HARRIET FIBEL, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1414-63—1417-63. Filed July 28, 1965.

*Alan Prigal* and *Gerald J. Robinson*, for the petitioners.
*Warren S. Shine*, for the respondent.

PIERCE, *Judge:* Respondent notified petitioners that they were liable as transferees or as transferees of transferees, of the assets of the 213 Greene Street Corp., in respect of an alleged deficiency of $44,106.40

---

[1] Proceedings of the following petitioners are consolidated herewith: Kalmin Fibel, docket No. 1415-63; Dave Cohen, docket No. 1416-63; and Leon Cohen, docket No. 1417-63.

in the corporation's 1956 income tax, plus interest thereon as provided by law. Also, the respondent, by amendment to his anwer in docket No. 1415-63, at the trial herein, asserted transferee liability in an increased amount against petitioner Kalmin Fibel. In said amendment, respondent alleged that Kalmin was the transferee of cash and other property in the amount of $46,831.74, rather than $38,857.11 as set forth in the notice of transferee liability to Kalmin and in the respondent's original answer in Kalmin's case.

Respondent has asserted that Dave Cohen and Leon Cohen are transferees of 213 Greene Street Corp.; that Harriet Fibel is a transferee of Max Cohen, now deceased, who was a transferee of the corporation; and that Kalmin Fibel is a transferee of Harriet Fibel.

The cases were consolidated for trial.

The issues for decision are:

(1) Whether the above-mentioned corporation-transferor is entitled to nonrecognition of gain upon the condemnation of its improved real property by the City of New York, as a result of having qualified as a corporation in liquidation under section 337(a) of the 1954 Code; or whether the corporation failed to qualify under section 337(a) because it (a) failed to adopt a plan of liquidation until after the date on which the property was condemned; and/or (b) failed to distribute its assets within the 12-month period after the date of the adoption of a plan of liquidation—so as to require that the corporation recognize the gain which it realized upon the condemnation.

(2) If the corporation's gain on condemnation is required to be recognized, are the petitioners liable for the corporation's resulting 1956 Federal income tax deficiency, as the transferees and successor transferees of the assets of the corporation.

### FINDINGS OF FACT

Some of the facts are stipulated. The stipulation of facts and all exhibits identified therein are incorporated herein by reference.

213 Greene Street Corp. (hereinafter called the Greene Street corporation) was a real estate corporation organized under the laws of the State of New York in 1944. The stock of the Greene Street corporation from its inception and throughout all relevant times thereafter, was owned in equal portions by Max Cohen and his two sons, petitioners Dave Cohen and Leon Cohen. Petitioner Harriet Fibel is the daughter of Max Cohen; and petitioner Kalmin Fibel is Harriet's husband. Max Cohen died in September 1957. All of the petitioners use the cash method of accounting.

The Greene Street corporation filed a Federal corporation income tax return for each of the calendar years 1955, 1956, and 1957, with the district director of internal revenue, Lower Manhattan District, in New York City.

In 1944, the Greene Street corporation purchased improved real estate at 209–213 Greene Street, in New York City; and it leased most of the space therein to Century, Ltd., a corporation engaged in the business of selling furniture, the stock of which was owned in equal amounts by the above-mentioned Max, Dave, and Leon Cohen. The Greene Street corporation continued to own said property until August 5, 1955, when the city of New York, under authority of its condemnation laws, took title thereto by a condemnation order issued by a New York State court, in a proceeding entitled "In the Matter of the Application of the City of New York, relative to acquiring title in fee simple absolute to real property required for Washington Square slum clearance project."

The stockholders of the Greene Street corporation were aware for several months prior to the actual condemnation, that the corporation's real property probably would be condemned; and they considered, upon the advice of their accountant and tax adviser, the alternatives of investing the proceeds of the condemnation in similar type property or of liquidating the corporation. On August 3, 1955, Dave and Leon Cohen learned from an individual employed by the New York City Housing Authority, that the actual condemnation by the city would take place in a couple of days; and, on that same date of August 3, a meeting of the stockholders of the Greene Street corporation was held, at which a resolution was adopted that the corporation be liquidated within 1 year.[2]

The city of New York on February 15, 1956, made an advance payment of $71,250 to the Greene Street corporation to be credited against the final condemnation award subsequently made. Of this sum, $50,000 was paid directly to the corporation and $21,250 was paid to a mortgagee of the corporation's property.

Thereafter on September 25, 1956, a final decree was entered by the New York court, wherein the amount of the condemnation award for the corporation's Greene Street property was fixed at $223,024, together with interest thereon from August 5, 1955. Prior to said date of September 25, 1956, the amount which would be fixed and thereafter paid to the corporation as an award for its property, was not determinable. Subsequently, the city of New York made a final payment to the corporation on November 28, 1956, of $151,744 ($223,024, less $71,250 previously paid), plus interest of $9,490.72.

The following instrument was signed by Leon Cohen, president of the Greene Street corporation; and, although it bears the date of August 1, 1956 (a date within 12 months after the adoption of the

---

[2] The exact date when the resolution to liquidate was adopted has been a strongly contested question in this case. After a careful consideration and weighing of the evidence on the point, we have concluded and found as a fact that the resolution was adopted at a stockholders meeting on Aug. 3, 1955, rather than on Aug. 8, 1955, as contended by the respondent.

plan of liquidation), the record herein does not establish that it either actually was signed on said date, or that any distribution of corporate assets pursuant to such instrument was made by the corporation to its stockholders.

ASSIGNMENT

KNOW ALL MEN, that the undersigned, 213 GREENE STREET CORPORATION, a domestic corporation having its principal place of business in the Borough of Manhattan, City and State of New York for ONE ($1.00) DOLLAR and other good and valuable consideration receipt of which is hereby acknowledged, does hereby assign, transfer and set over unto LEON COHEN, DAVE COHEN AND MAX COHEN all of its right, title and interest in and to all monies due or which may become due to it from the City of New York as payment of the balance of a Condemnation Award owing the undersigned by reason of the Condemnation by the City of New York of premises owned by the undersigned and known as 213 Greene Street, Borough of Manhattan, City and State of New York.

IN WITNESS WHEREOF, It has hereunto set its hand and seal this 1st day of August, 1956.

Witnessed by:

(S)  DAVID COHEN                213 GREENE STREET CORPORATION.
[CORPORATE SEAL]        By (S)  LEON COHEN, *President.*

Provisions were appended underneath the foregoing instrument, for acknowledgment of the same before a notary public. The acknowledgment was never made; the instrument was never filed or recorded; and no transfer of corporate assets pursuant to such instrument was ever reflected or recorded on the corporation's books of account.

Neither the stockholders, nor any of them, nor the corporation's accountant and tax adviser, nor anyone acting on behalf of him or the stockholders, ever informed the city of New York of the existence of the foregoing instrument.

In October 1956, the Greene Street corporation borrowed, in its own name, $75,000 from a New York bank. In the course of negotiations leading up to the bank's granting of said loan, the bank was not informed of the existence of any such instrument. At the time when said loan was granted, the corporation's only asset other than its claim against the city of New York for the proceeds of the condemnation award, was a small amount of cash that it was holding for the payment of New York State franchise taxes and accounting and legal fees.

After the corporation had in November 1956 received the final installment of the condemnation award plus interest thereon (totaling approximately $161,000), it utilized a portion thereof to pay off its said loan to the New York bank; but it did not then distribute the entire balance of the award to its stockholders. Rather, as of December 31, 1956, the corporation still retained $54,000 as a corporate asset, in its bank account. The sole remaining claim against the corporation as of said date was for New York State franchise taxes. The individual

who was the corporation's accountant and tax adviser, and who had served as such ever since the corporation's formation, knew that the annual franchise tax had never exceeded $5,000; and he knew, at December 31, 1956, that the corporation's 1956 franchise tax would be no more than this. The reason why the corporation did not distribute the full balance of the assets (excepting the few thousand dollars required for the payment of the 1956 franchise tax) was to accommodate its cash basis stockholders. It was the desire of the stockholders that only a portion of the corporate liquidating distributions to them be made in each of the years 1956 and 1957, so that their resulting Federal income taxes would be less than if the entire liquidating distributions were paid to them in the single year 1956—as could have been done following the final payment on the condemnation award in November of that year. Moreover, each of the stockholders did report in his personal 1957 income tax return that he actually did receive distributions from the Greene Street corporation, in complete liquidation thereof, in the year 1957, which was more than 12 months after the adoption of the resolution to liquidate.

The Greene Street corporation made a series of liquidating distributions, beginning in February 1956 and continuing until July 1957, to, or at the direction of, or for the benefit of its stockholders, Max, Dave, and Leon Cohen. Max, who did not die until September 1957 (which was subsequent to all of said liquidating distributions), directed that distributions to which he was entitled, be paid by the corporation to his daughter, petitioner Harriet Fibel, so that each of Max's three children (Dave and Leon Cohen and Harriet Fibel) would receive approximately equal shares of the liquidating distributions from the Greene Street corporation. Harriet, in turn, subsequently directed that portions of the liquidating distributions to which she became entitled as Max's designee, be paid by the corporation directly to or for the benefit of her husband, petitioner Kalmin Fibel, or by having payments made to or for the benefit of certain corporations in which Kalmin was a stockholder. The Greene Street corporation's liquidating distributions to, at the direction of, or for the benefit of Max, Dave, and Leon Cohen, were as follows:

| Time | Total | Max | Dave | Leon |
|------|-------|-----|------|------|
| 1. Feb. 15, 1956–July 31, 1956 | $15, 250. 61 | $5, 083. 54 | $5, 083. 53 | $5, 083. 54 |
| 2. Feb. 15, 1956–July 31, 1956 | 2, 000. 00 | 666. 67 | 666. 67 | 666. 66 |
| 3. Aug. 15, 1956–July 19, 1957 | 24, 778. 33 | 6, 896. 95 | 8, 940. 69 | 8, 940. 69 |
| 4. Aug. 15, 1956–July 19, 1957 | 10, 424. 93 | 2, 549. 04 | 3, 612. 40 | 4, 263. 49 |
| 5. Aug. 15, 1956–July 19, 1957 | 1, 732. 76 | 534. 59 | 611. 42 | 586. 75 |
| 6. Aug. 15, 1956–July 19, 1957 | 74, 704. 39 | 24, 901. 46 | 24, 901. 47 | 24, 901. 46 |
| 7. Aug. 15, 1956–July 19, 1957 | 45, 000. 00 | 15, 000. 00 | 15, 000. 00 | 15, 000. 00 |
| 8. Aug. 15, 1956–July 19, 1957 | 3, 500. 00 | 1, 166. 66 | 1, 166. 67 | 1, 166. 67 |
| 9. Aug. 15, 1956–July 19, 1957 | 1, 556. 21 | 518. 74 | 518. 74 | 518. 73 |
| Totals | 178, 947. 23 | 57, 317. 65 | 60, 501. 59 | 61, 127. 99 |

The distributions on line 1 of the foregoing table, represent a portion of a total of $28,500 which was paid in the amount of $9,500 to or at the direction of each stockholder of the Greene Street corporation. It has been stipulated that of the total amount of $28,500 so paid, $13,249.39 represented repayment of loans due to the stockholders equally. Thus the remaining portion of said $28,500 that represented corporate liquidating distributions was $15,250.61. Max's share of this amount ($5,083.54) was paid over by the corporation at his direction to his daughter, petitioner Harriet Fibel.

The distributions on line 2 were disbursed by the Greene Street corporation to or for the benefit of its stockholders or their designees, through the medium of making payments at their direction to or for the benefit of Whitlow Restaurant Corp., of which all the stock was owned equally by Leon Cohen, Dave Cohen, and Kalmin Fibel. The amount of $666.67 appearing under Max's name was so paid, at the direction of his daughter, Harriet (to whom Max had previously directed that distributions to which he was entitled be paid), to or for the benefit of her husband, Kalmin.

The distributions in line 3 were cash distributions. The amounts of $8,940.69 appearing under each of the names of Dave and Leon were paid to them directly by the Greene Street corporation. The amount of $6,896.95 appearing under Max's name was, pursuant to his above-mentioned direction, to be paid over to his daughter Harriet; and Harriet thereupon caused $5,396.95 thereof to be paid over to her husband, Kalmin, while she herself received and retained $1,500.

The distributions in line 4 represent payments to the district director of internal revenue in New York City, on account of the respective stockholders' individual Federal income tax liabilities.

The distributions in line 5 represent payments to the New York State Tax Commission, on account of the respective stockholders' individual State income tax liabilities.

The distributions in lines 6, 7, and 8, were similar to those above-described with respect to line 2 of the table. The distributions on line 6 were paid to or for the benefit of the stockholders or their designees, through the medium of making payments at their direction to or for the benefit of Dale Bar & Grill, Inc.; those on line 7 were to or for the benefit of said stockholders, or their designees, through the medium of payments made at their direction to or for the benefit of Fico Realty Corp.; and those on line 8 were to or for the benefit of these same stockholders or their designees, by making payments at their direction to or for the benefit of the above-mentioned Whitlow Corporation—each of which corporations (Dale, Fico, and Whitlow) was owned in equal shares by Dave and Leon Cohen and Kalmin Fibel.

The distributions on line 9 were disbursed by the Greene Street corporation to or for the benefit of its stockholders, by making payments to

or for the benefit of the above-mentioned Century, Ltd., which was owned by Max, Dave, and Leon Cohen, in equal shares.

In instances where the Greene Street corporation made disbursements to or for the benefit of Dale Bar & Grill, Whitlow Corp., Fico Realty Corp., or Century, Ltd., the Greene Street corporation treated the same as liquidating distributions to its stockholders (Max, Dave, and Leon) on its books and records; whereas the corporations to or for whose benefit the disbursements were made, treated the same as either loans to, or investments in, said corporations by their own stockholders. Dave and Leon Cohen and Kalmin Fibel were the equal stockholders of Dale Bar & Grill, Whitlow, and Fico Realty; and Max, Dave, and Leon Cohen were the equal stockholders of Century, Ltd.

All the foregoing liquidating distributions by the Greene Street corporation were made without any consideration moving to said corporation from either Max, Dave, or Leon Cohen, or Harriet or Kalmin Fibel. As a result of the foregoing liquidating distributions, the Greene Street corporation was rendered insolvent.

As a result of the foregoing, Harriet Fibel actually or constructively received without consideration, assets of the Greene Street corporation, through her father, in the amount of $53,715.28. Also, as a result of Max causing portions of his share of the liquidating distributions from the Greene Street corporation to be transferred to or for Harriet, Max was rendered insolvent; and he left no estate upon his death in September 1957.

Also as a result of the foregoing, Kalmin Fibel actually or constructively received without consideration, assets of the Greene Street corporation, through Max and Harriet, in the amount of $47,131.74. These transfers to or for the benefit of Kalmin, rendered Harriet insolvent.

The value of the assets of the Greene Street corporation which each of present petitioners so received, as distributions in complete liquidation of said corporation, was in excess of the amount of said corporation's deficiency in income tax for the year 1956, which was $44,106.40.

OPINION

*I*

The first issue in the instant case relates to the tax liability of the alleged transferor, 213 Greene Street Corp., for the taxable calendar year 1956. Specifically, we must determine whether the Greene Street corporation was required to recognize the gain realized upon the condemnation of its improved real property by the city of New York.

The petitioners, alleged transferees and transferees of transferees

of the corporation, rely on section 337 of the 1954 Code, in order to overturn the respondent's determination that the corporation should have recognized the gain. Under section 337(a), if a corporation adopts a plan of liquidation on or after June 22, 1954, and within 12 months after adoption of such plan distributes in complete liquidation all of its assets, less those retained to meet claims, then any gain from the sale or exchange of property within that 12-month period is not recognized to the corporation.[3]

Under the condemnation laws of the city of New York, title passes to the condemning authority on the date of the entry of the court order granting the application to condemn; and the condemnation is considered a "sale" on that date. *Wood Harmon Corporation* v. *United States*, 206 F. Supp. 773, and *44 West 3d Street Corporation*, 39 T.C. 809, affd. 326 F. 2d 600 (C.A. 2). The cited cases involved taxpayers whose properties were taken in the same condemnation proceedings wherein the Greene Street corporation's property was condemned—proceedings to acquire property for the Washington Square slum clearance project in New York City. In said cases, the courts held that the effective date of that sale was August 5, 1955, which was the date of the entry of the order by the New York court granting the city's application to condemn. In this connection, the District Court stated in the *Wood Harmon* case (206 F. Supp. at 775): "it seems clear that the 'sale' of the Washington Square property, within the meaning of Section 337, must be considered to have taken place on the date of the condemnation, August 5, 1955."

Thus we have a "sale" of property in the instant case, on August 5, 1955. In order for the Greene Street corporation to avoid recognizing the gain on that sale, it must, under the above-quoted statute, have adopted a plan of liquidation on or before August 5, 1955; and it must also have distributed its assets to its stockholders within 12 months after the date on which it adopted said plan.

The parties have stipulated that the corporation adopted a plan of complete liquidation; but they are, as previously stated, in sharp disagreement as to *when* the plan was adopted. The question appears to us to be a factual one; and after carefully weighing and considering all the testimony and other evidence on the point—and not without some hesitations and doubts—we have resolved the matter in peti-

---

[3] SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.

(a) GENERAL RULE.—If—
(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and
(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

tioners' favor, finding as a fact that the plan was adopted on August 3, 1955, 2 days prior to the "sale."

As to the second requirement, that the Greene Street corporation distribute all its assets (less those retained to meet claims) within 12 months after adoption of the plan of liquidation, it is our opinion that the petitioners have not established that the corporation fulfilled this requirement. Rather, we are convinced and we have hereinbefore found as a fact, that the corporation did not complete distributions to its stockholders until July 1957, which was nearly 2 years after the adoption of the plan.

The regulations under section 337 make it clear that section 337 does not apply if assets are retained beyond the 12-month period for purposes other than payment of ascertained or reasonably expected liabilities and expenses. Thus, section 1.337–2(b), Income Tax Regs., states in part as follows:

Sec. 1.337–2 Sales or exchanges within the scope of section 337.

(b) * * * Section 337 shall not apply in any case in which all of the corporate assets (other than those retained to meet claims) are not distributed to the shareholders within 12 months after the date of the adoption of a resolution by the shareholders authorizing the distribution of all the corporate assets in redemption of all of the corporate stock. A corporation will be considered to have distributed all of its property other than assets retained to meet claims even though it has retained an amount of cash equal to its known liabilities and liquidating expenses plus an amount of cash set aside under arrangements for the payment after the close of the 12-month period of unascertained or contingent liabilities and contingent expenses. Such arrangements for payment must be made in good faith, the amount set aside must be reasonable, *and no amount may be set aside to meet claims of shareholders with respect to their stock.* [Emphasis supplied.]

On December 31, 1956 (almost 17 months after August 3, 1955), the Greene Street corporation still had undistributed cash of approximately $54,000. At that time its only reasonably anticipated liability was for 1 year's (presumably 1956) New York State franchise taxes— taxes that had never exceeded $5,000 for any year, a fact of which the corporation's accountant and tax adviser was fully aware. Ultimately, over $50,000 of this $54,000 was actually distributed to or for the benefit of the corporation's stockholders, and they reported receipt of the same in their individual 1957 Federal income tax returns. The reason for delaying the distributions to stockholders into 1957 was, as shown by our findings of fact, to permit them to pay less taxes on the distributions than would have been the case had they received them in their entirety in 1956.

The petitioners, in an effort to overcome the effect of the foregoing facts and circumstances, have introduced into evidence an instrument signed by Leon Cohen, as president of the Greene Street corporation, purporting to be an assignment by said corporation to its sharehold-

ers of the remaining amount expected to be thereafter fixed and paid to it, on the condemnation of its property. This instrument bears the date of August 1, 1956, which was within the 1-year period running from August 3, 1955, when the resolution to liquidate the Greene Street corporation was adopted. Whether the instrument was actually signed on the date that it bears has been a sharply contested issue in the instant case. We are not convinced from the evidence herein that it was actually signed on August 1, 1956. However, for reasons presently to be stated, we are of the opinion that petitioners could not prevail even if they had established that the so-called assignment had been signed on August 1, 1956.

In our judgment there was as a matter of substance, no bona fide and actual transfer or distribution, of the Greene Street corporation's claim against the city of New York, to the corporation's stockholders on August 1, 1956, or at any other time. The burden of proof is upon the petitioners as to this issue and we believe that such burden has not been met. There is no evidence that the corporation's stockholders or directors adopted any resolution authorizing the distribution to the stockholders of the corporation's claim against the city of New York, such as might reasonably be expected where said claim represented the corporation's largest single asset—indeed its only remaining asset other than a relatively small amount of cash. Also, there is no evidence that any transfer of the corporation's claim against the city of New York was either entered or reflected on the corporation's books of account. Such evidence as there is respecting the books of account, tends to point the other way; for the account entitled "liquidating dividends" in the corporation's general ledger, indicates that all such dividends were made in cash, and that these cash distributions to stockholders continued to be made up until July 1957. Moreover, the "assignment" was not acknowledged before a notary or other official, so as to establish the particular date on which it was executed; nor was it publicly recorded, so as to give notice to those who might then or thereafter have claims against the corporation; nor was any notice or other information as to the existence of such an instrument given to the city of New York—with the result that in November 1956, the city paid the remaining balance of the condemnation award *to the corporation*, rather than to the stockholders.

Furthermore, and very significantly, the corporation itself wilfully caused the bank to believe that it still owned the claim against the city of New York as its principal remaining corporate asset when in late October 1956 (almost 3 months after the said claimed "assignment" had been allegedly made), it borrowed $75,000 from a New York bank, without informing the bank of any said "assignment." Indeed, Leon Cohen testified at the trial herein, that if the bank had

been informed of any such disposition of assets, "we would never have gotten the loan."

And, finally, the corporation actually retained a substantial portion of the proceeds of the condemnation award long after they were received from the city; and it actually did not complete distributions to the stockholders until July 1957—a delay in distribution which was purposefully designed by the stockholders to minimize their tax liabilities, by having the distributions spread over 2 years rather than by having them lumped entirely into the single year 1956 when all distributions could easily have been completed.

On the basis of all the foregoing, we are convinced and here hold that the Greene Street corporation did not distribute to its stockholders its claim against the city of New York on August 1, 1956, or at any other time; that it did not distribute all its assets to its stockholders within the 12-month period following adoption of a plan of complete liquidation; and accordingly that it was not entitled to avail itself of the nonrecognition of its gain from the condemnation sale of its property, under the provisions of section 337. It follows that said corporation was liable for the deficiency in its income tax for the year 1956, in the amount of $44,106.40, which the Commissioner determined; and we approve the Commissioner's determination in this regard.

## II

The second issue is whether the petitioners are liable for the deficiency in the Greene Street corporation's Federal income taxes for 1956, plus interest thereon as provided by law, as transferees and successor transferees of the assets of the said corporation. Whether or not the petitioners are so liable, depends on the law of the State of New York, that is the State in which the transfers took place. *Commissioner* v. *Stern*, 357 U.S. 39.

The relevant New York statute is New York Debtor and Creditor Law, sec. 273 (McKinney's Consolidated Laws, art. 10), which provides as follows:

Sec. 273. Conveyance by insolvent.

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

We take up first the question of the transferee liability of Dave Cohen and Leon Cohen. Dave and Leon, as distinguished from Kalmin and Harriet Fibel, were determined by the respondent to be direct transferees of the Greene Street corporation, of which the two brothers were stockholders. The alleged transfers involved con-

sisted of corporate distributions of three types: Direct cash distributions by the Greene Street corporation to these brothers; payment by said corporation of Federal and State income taxes on their behalf; and payment of amounts by such corporation to or for the benefit of these brother-stockholders, through the medium of payments made at their direction to or for the benefit of four other corporations of which the brothers were stockholders. We have hereinbefore found as facts that all of these transfer-distributions were without consideration, and that as a result thereof, the Greene Street corporation was rendered insolvent.

Clearly, the direct cash distributions to the brothers were "transfers" to them within the intendment of section 6901 of the 1954 Code, the statute that pertains to transferee liability. And, in our opinion, the corporation's payment of the brothers' tax liabilities and its payment of moneys at their direction to or for the benefit of other corporations in which the brothers were stockholders, must likewise be treated as transfers to them. The situation is much the same as if the Greene Street corporation had distributed the moneys to the brothers directly and then the brothers had used the moneys so received to pay their tax liabilities and to make loans to or capital investments in corporations in which they held stock. In such hypothetical situation, the brothers' acts of disposing of the moneys so received would not operate to prevent the creation of transferee liabilities. The mere fact that they chose to short-circuit the process, and have the corporation pay over the moneys for their benefit to their designees, does not, in our opinion, call for a different result. Were a different result required, the effectiveness of the transferee sections would be emasculated. In a somewhat analogous situation, the courts have held that payment by a corporation of a debt of a stockholder effects the distribution of a constructive dividend to such stockholder. See, for example, *Wall* v. *United States*, 164 F. 2d 462 (C.A. 4). We believe that by a parity of reasoning, corporate liquidating distributions paid for a stockholder's benefit or at his direction in discharge of his debt or for some other personal purpose of his should be treated as a corporate liquidating distribution *to said stockholder*, capable of forming the basis of transferee liability in him, in respect of the tax liabilities of the distributor corporation. We hold that Dave and Leon received actually or constructively distributions in complete liquidation of the Greene Street corporation in the amounts of $60,501.59 and $61,127.99, respectively; and that, by reason thereof they are liable as transferees of the assets of said corporation, for the above-mentioned deficiency in said corporation's income taxes for 1956, plus interest thereon as provided by law.

We turn next to a consideration of Harriet Fibel's alleged transferee liability. Specifically, Harriet was determined by the respondent

to be a transferee of a transferee (Max Cohen) of assets of the Greene Street corporation. The alleged transfers to her represent amounts which her father Max (an equal one-third stockholder in the Greene Street corporation with Harriet's brothers, Dave and Leon Cohen) directed to be paid over to her—and which constituted the greater part of his share in the liquidating distributions of said corporation. Harriet gave no consideration either to her father or to the corporation for these amounts; and her father, Max, was rendered insolvent as a result of these transfers—as we have hereinbefore found.

If Harriet had received and retained, consideration-free, all the liquidating distributions which her father so directed to be paid to her, it seems clear to us that she would under the facts which we have above found be a transferee of a transferee of the assets of the Greene Street corporation, to the full extent thereof. Actually, Harriet, after thus acquiring the right to said distributions of her father, retained only portions of these distributions for her own benefit (i.e., $5,083.54 out of the first of the distributions shown in the schedule contained in our Findings of Fact; and $1,500 out of the third distribution therein shown) and she caused all of the remainder of the liquidating distributions to which she was entitled to be paid either directly to her husband, Kalmin Fibel, or to his designees which were three other corporations of which he was a stockholder. Does Harriet's deflection of the moneys to which she was entitled, away from herself and to her husband or into her husband's designees, absolve Harriet from transferee liability in respect of such deflected sums? We think not—for the same reasons that have impelled us to hold above that Dave and Leon could not escape transferee liability in respect of the moneys which the Greene Street corporation paid at their direction, to corporations in which they held stockholders' interests. We hold that Harriet received, actually or constructively, as transferee of her father, assets of the Greene Street corporation in the amount of $53,715.28; and that by reason thereof, she is liable as a transferee of a transferee (her father) of assets of the Greene Street corporation, for the amount of said corporation's deficiency in its 1956 income taxes, plus interest thereon as provided by law.

Finally, we consider the transferee liability determined against Kalmin Fibel, as a transferee of transferee (i.e., of Harriet, who was a transferee of Max Cohen) of the assets of the Greene Street corporation. The evidence establishes that he received not only cash of $5,396.95 which was paid directly to him as the designee of his wife, but that he also received the benefit of additional amounts totaling $41,734.79 which were paid at his wife's direction to designees of his, which were three corporations in which he was an equal stockholder with his brothers-in-law, Dave and Leon Cohen. The total of all the distributions so received either by him or by his designees, was $47,131.74.

As we have hereinbefore found as facts, Kalmin gave no consideration to anyone for any of these amounts; and following the transfers, Harriet was insolvent. The last-mentioned designee corporations treated the amounts which they received either directly or indirectly, as loans or investments made to them by Kalmin.

In our opinion the $5,396.95 cash which Kalmin personally received at the direction of Harriet, constituted a transfer to him, as a transferee of a transferee of assets of the Greene Street corporation; and, for reasons already elaborated in discussing the transferee liabilities of Dave and Leon and Harriet, the amounts of which Kalmin received the benefit of having similar distributions paid to his own designees (the corporations in which he was a stockholder) likewise constituted transfers to him, as a transferee of a transferee of assets of the Greene Street corporation.

We hold, in accordance with our findings of fact, that Kalmin received either directly or indirectly as a transferee of a transferee of the Greene Street corporation, a total of $47,131.74; and we further hold that he is liable, as a transferee of a transferee of assets of said transferor corporation, for that corporation's deficiency in its income tax for 1956, plus interest thereon as provided by law.

*Decisions will be entered under Rule 50.*