WILLARD H. SHARTLE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ALICEMAE M. SHARTLE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shartle v. Commissioner
Docket Nos. 11189-86, 11529-86.[1]
United States Tax Court
T.C. Memo 1988-354; 1988 Tax Ct. Memo LEXIS 384; 55 T.C.M. (CCH) 1484; T.C.M. (RIA) 88354; August 8, 1988. Willard H. Shartle, pro se. James J. Ryan and M. Freeman Durham (specially recognized), for the petitioner in docket No. 11529-86. Nancy B. Herbert, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND *385 OPINION GERBER, Judge: Respondent, by statutory notices of liability dated January 29, 1986, determined that petitioners, individually, were liable as transferees of the assets of West Side Animal Clinic, Inc., for tax and additions thereto as follows: Corporate
Personal
Additions to Tax
Year
Income Tax
Holding Co. Tax
6651(a) [2]
6653(a)
6655
1971
$  1,461
$ 2,687
$   365
$  73
$ -- 1972 10,534
--
2,634
527
252
1974
--
--
120
24
6
1975
834
--
233
47
25
The issues for our consideration are: (1) Whether petitioner Willard Shartle and/or petitioner Alicemae Shartle are partially or wholly liable, as transferees of the assets of West Side Animal Clinic, Inc., for unpaid tax liabilities and additions to tax due from said corporation for taxable years 1971, 972, 1974 and 1975; and (2) should we determine that Alicemae Shartle is a transferee of the assets of West *386 Side Animal Clinic, Inc., whether the statute of limitations bars the assessment of tax due from her. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Willard Shartle (Willard) and Alicemae Shartle (Alicemae) were residents of Hamilton, Ohio, at the time their petitions were filed. This controversy arises from the failure of West Side Animal Clinic, Inc. (West Side), to file income tax returns for taxable years 1970, 1971, 1972, 1974 and 1975, and the subsequent transfer of West Side's assets in satisfaction of Willard's legal obligation. Willard and Alicemae were married from September 1946 until March 1980. Their marriage was dissolved on March 4, 1980, by a decree of divorce. A judgment and decree of divorce was entered by the Domestic Relations Court), Butler County, Ohio. Pursuant to the judgment and decree of divorce all property acquired by petitioners during the marriage, including two parcels of real property held by West Side, was divided equally between them. West Side was incorporated in the State of Ohio on July 1, 1959, and had its principal *387 place of business in Hamilton, Ohio. The incorporators, as listed on the Articles of Incorporation, were Willard, Alicemae and Emma E. Shartle (the mother of Willard H. Shartle). The Articles of Incorporation authorized West Side to issue 200 shares of common stock with a stated value of $ 100 per share. It is uncertain whether any stock certificates were ever issued. West Side's stated capital was $ 500. After the incorporation of West Side, Willard commenced operating a veterinary clinic as well as holding and managing rental property through the corporation. Willard held a degree in veterinary medicine and practiced veterinary medicine until approximately 1981. The veterinary clinic of West Side was operated from a building located at 1499 Hamilton Richmond Road. The real estate held by West Side was acquired as follows: In 1966, Willard negotiated the purchase of certain commercial property located at 1433 Hamilton Richmond Road, Hamilton, Ohio. Title to this property was held in the name of West Side pursuant to Willard's instructions. West Side was located in this building as well as other rental property. In 1970, Willard negotiated the purchase of certain residential *388 property located at 1431 Hamilton Richmond Road, Hamilton, Ohio. Title to this property was taken in the name of West Side pursuant to Willard's instructions. This property originally was rented to the veterinarian which operated the clinic under the name of Westside Animal Clinic. The 1431 Hamilton Richmond Road property became the residence of Willard and Alicemae sometime in 1971. The two parcels of Hamilton Richmond Road real property continued to be held by West Side from the date of purchase until the date the Domestic Relations Court caused them to be transferred to Alicemae. The corporate charter of West Side Clinic was revoked by the Secretary of State of the State of Ohio on June 30, 1980. During the years Willard owned and operated West Side, Alicmae assisted in the day-to-day operations only when there was a staff shortage and there was no one to fill in. She was never paid a salary nor did she receive any form of compensation for the times she assisted at the clinic. She often signed papers connected with the real estate held by her husband through West Side and another corporation without asking questions. Alicemae did not invest in West Side, receive any shares *389 in the corporation, receive notice of or attend any shareholders or Board of Directors meetings, vote in any election for directors of the corporation, receive any dividends from West Side, or write any checks on the corporation's account. Alicemae had no knowledge of or responsibility for the preparation or filing of Federal or state income tax returns for West Side. Alicemae, who was unaware of the tax deficiencies outstanding against the corporation, first became aware of them when she received the notice of transferee liability. West Side failed to file Federal corporate income tax returns for the taxable years 1970, 1971, 1972, 1974 and 1975. After one of respondent's agents examined West Side's books for the taxable years 1970 through 1975, a Form 870, Waiver of Restriction on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment (Form 870), was signed on February 4, 1982, by Willard on West Side's behalf. The taxable years covered by the Form 870 were 1970, 1971, 1972, 1974 and 1975. In addition, Willard acquired other property during his marriage to Alicemae including the Fairfield Dixie Animal Clinic, Inc. (Fairfield), which was incorporated *390 by Willard and the other two named incorporators of West Side on or about the same time as West Side's incorporation. Sometime after the incorporation of Fairfield, Willard negotiated the purchase of certain commercial properties located at 5107-5117 Dixie Highway, (hereinafter referred to as the Dixie property). Fairfield was operated on this property and some of the buildings were leased to third parties. The corporate charter for Fairfield Clinic was cancelled by the Secretary of State of the State of Ohio on October 31, 1979. Willard collected the rental income from these properties and was at all times responsible for their management. Another piece of real property acquired by Willard during these years was located at 631 Main Street. This property served as the residence of Willard and his mother. At the time of trial they still occupied this residence. On or about November 15, 1983, Fairfield, acting through Willard, contracted to sell the real estate located at 5117 Dixie Highway and the adjoining land for the sum of $ 200,000. This property housed the Fairfield Clinic. The sales contract was closed on or about March 30, 1984. The property was purchased by the A. *391 O.K. Holding Company. At the time Willard entered into this sale, he was aware of the outstanding tax deficiencies of West Side. Approximately 1 year after the property was sold, it was repurchased by Emma Shartle for a purported sales price of $ 154,723.48. As part of the sales price Willard gave the sellers (previous purchasers) a complete release of any and all claims that he or Emma Shartle might have against them on account of their purchase, ownership, and sale of the property. Immediately upon receipt of the property, Emma Shartle conveyed it to the "Shartle Family Trust," for the benefit of her son, Willard. The instruments creating this trust all bore the same date as the date the property was repurchased. The Court of Common Pleas, Divisions of Domestic Relations, Butler County, Ohio, ordered that Alicemae receive, as part of the divorce proceedings and in settlement of the property rights acquired during their marriage, the real property located at 1431 and 1433 Hamilton Richmond Road, together with certain other chattels and a cash award of $ 75,000. Also, pursuant to the divorce decree the Court awarded Willard all rights, title and interest in the properties located *392 at 631 Main Street and 5107-5117 Dixie Highway. The balance on the bank account was less than $ 2,500. These funds were delivered to the Clerk of Court, Court of Common Pleas, Division of Domestic Relations, Butler County, Ohio, as partial payment of the $ 75,000 the Court ordered Willard Shartle to pay Alicemae as part of the property settlement. Because of Willard's refusal to execute the deeds necessary for the transfer of the Richmond Road property to Alicemae, the Court caused this property to be transferred to her on June 2, 1980. The transfer of the Richmond property to Alicemae caused West Side to become insolvent. The approximate fair market value of the two properties transferred to Alicemae was $ 257,000. The approximate fair market value of the two properties retained by Willard was $ 298,000. OPINION Section 6901 contains the statutory framework for assessment and collection of the tax against a transferee of property received from a transferor-taxpayer having unpaid tax liabilities. Section 6902 imposes on respondent the burden of proving that the recipient of property is liable as a transferee. To meet his burden of proof, respondent must show that: (1) Property *393 belonging to West Side Clinic was transferred to petitioners without adequate consideration; (2) West Side Clinic was insolvent at the time of, or rendered insolvent by, such transfer, or that the transfer was in fraud of creditors; and (3) respondent has made every reasonable effort to collect the taxes from the transferor corporation. Kreps v. Commissioner,42 T.C. 660, 669 (1964), affd. 351 F.2d 1 (2d Cir. 1965). Respondent contends that one or both of petitioners are liable as transferees for the unpaid income tax deficiencies and additions to tax due from West Side Clinic for the years 1971, 1972, 1974 and 1975. Both petitioners argue that the other is liable as a transferee. Section 6901 provides only the method of collecting West Side's tax deficiencies from Alicemae and/or Willard should we find that they are transferees of West Side's assets. Whether Willard or Alicemae is liable as a transferee must be determined under the law of the state where the transfer took place. Commissioner v. Stern,357 U.S. 39 (1958). In the present case, because the property involved was transferred in the State of Ohio, the law of that *394 state is applicable. Under section 1336.04 et seq., Ohio Rev. Code Ann. (Anderson 1961), a fraudulent conveyance has occurred if the debtor was insolvent or was made insolvent by the transfer and there was a lack of fair consideration. Sease v. John Smith Grain Co.,17 Ohio App.3d 223, 479 N.E. 2d 294 (1984). Section 1336.04, Ohio Rev. Code Ann. (Anderson 1961), provides, in relevant part, that: Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.
Intent of the transferor or the intent or knowledge of the transferee is irrelevant in determining whether the transfer was fraudulent. Cellar Lumber Co. v. Holley,9 Ohio App. 2d 288, 224 N.E. 2d 360 (1967). Moreover, in the State of Ohio, the claims of a corporation's creditors are not destroyed by dissolution of the corporation. Rather, the assets of the corporation are considered being transferred subject to a trust for the payment of *395 the outstanding obligations and for the benefit of the creditors. United States v. Adams Building Co.,531 F.2d 342 (6th Cir. 1976); Leyman Corp. v. Piggly-Wiggly Corp.,90 Ohio App. 506, 103 N.E. 2d 399 (1951). Creditors of the insolvent corporation who retain the right to pursue a transferee of such corporation include the Government. Delia v. Commissioner,362 F.2d 400 (6th Cir. 1966), affg. T.C. Memo. 1964-329. First, we must determine whether Alicemae is liable as a transferee of West Side, and if so to what extent. Respondent contends that Alicemae is liable as a transferee for at least 5 percent of the value of the property transferred from West Side because she held at least 5 percent of the stock interest of the corporation and its assets were transferred to her in the capacity of a shareholder. We disagree. Respondent, in support of his position, looks to an affidavit executed by Alicemae during her divorce proceedings against Willard. We do not think this evidence supports a finding that Alicemae was a shareholder in West Side. In her affidavit, Alicemae stated that she believed that she and her two *396 daughters held no more than 5-percent interest in West Side. This claim was made solely on the statements made in the Shartle household [3] by other family members. Such statements often classified Alicemae as "the low man on the totem pole" with respect to West Side. Additionally, Emma Shartle once made a statement to Alicemae which caused Alicemae to believe that she and her daughters held a 5-percent interest in West Side. However, at trial, neither Willard nor Emma Shartle produced evidence to substantiate their claims that Alicemae was a shareholder of West Side, or to clarify what turned out to be a mistaken belief on Alicemae's part. Alicemae testified that she did not contribute any capital to West Side and she did not receive any tangible evidence of the stock ownership both respondent and Willard now seek to attribute to her. She also testified that she did not see any certificates of stock issued in her name, her husband's name, or that of her mother-in-law. None of the *397 incorporators testified that they received any tangible evidence of ownership in West Side Clinic. Emma Shartle testified that the ownership of the corporation was divided equally between herself, Willard and Alicemae. We attribute very little weight to Emma Shartle's testimony. Her testimony was biased in favor of her son, and she had forgotten many of the significant events surrounding the formation and operation of West Side. On occasion, her responses to questions indicated that she regarded West Side and Fairfield as one and the same corporation. Although Emma Shartle seemed determined to testify only about matters favorable to her son and his involvement with West Side and Fairfield, [4] she confessed that she never received any tangible evidence of her ownership in the corporation, nor did she see any shares of stock that were issued by West Side. Willard testified that he contributed, on the behalf *398 of himself, his wife, and in part, his mother, the $ 500 capital that was required for West Side's capitalization. Willard was unable, however, to produce any certificates of stock issued to the persons he contends were shareholders of West Side. At the time or trial, Willard was under subpoena to produce all stock records or corporate records regarding stock ownership of West Side, but did not have any stock records in his possession. Moreover, Willard did not testify that he had delivered any shares of stock to his mother or his wife verifying their alleged ownership in the corporation. Nothing in the record before us supports the finding the Alicemae held any interest in West Side. Alicemae did not invest in West Side, sign a subscription for shares in the corporation, receive any notice of or attend any shareholders meetings, or vote in an election for directors of the corporation. It appears that Willard's contention that Alicemae owned one-third of the stock interest in West Side is based on the fact that she was one of three incorporators. [5] Although Alicemae was an incorporator of West Side and signed documents as an officer of that corporation, this does not automatically *399 make her a shareholder of such corporation. Alicemae testified that whenever she attempted to ask questions about documents her husband asked her to sign, her husband would tell her that she did not need to know the details and she would sign as requested. To become a shareholder of a corporation, the intended shareholder must show an intent to become a shareholder and the corporation must acquiesce. Williams v. Vreeland,250 U.S. 295 (1919); Edward D. Woodward Co. v. Hart,17 Ohio App. 103 (1922). These requisite facts are not present in the instant case. Consequently, we hold that Alicemae was not a shareholder of West Side. Because Alicemae was not a shareholder of West Side, none of the property she received was transferred to her in the capacity of a shareholder of that corporation. Respondent does not contend that Alicemae is a transferee for any reason other than her alleged capacity as an actual shareholder of West Side. Respondent contends that *400 Willard is liable as a transferee for at least one-third of the property transferred from West Side to Alicemae. For the reasons set forth below, we hold that petitioner, Willard Shartle, is fully liable as a transferee for West Side's tax deficiencies. Willard contends that the stock of both West Side and Fairfield was owned equally by his mother, Alicemae and himself. However, the record does not support this contention. Willard places great emphasis on the fact that these persons were the incorporators if the two corporations. This is insufficient to support a finding that they were shareholders. Under Ohio law, an incorporator is defined as a person who signed the articles of incorporation. On the other hand, a shareholder is a person whose name appears on the books of the corporation as a shareholder or one who has subscribed to shares. See section 1701.01, Ohio Rev. Code Ann. (Anderson 1953). West Side was formed on Willard's initiative and with his funds. He was solely responsible for all actions and inactions with regard to the stock ownership of both West Side and Fairfield. He selected the properties to be purchased and decided whether *401 title to such properties would be held by the corporation. He was, at all times, in control of West Side regarding its operation and finances. He was not accountable to any other individual with respect to the business and he never held any shareholders or Board of Directors meetings. Such behavior is common where there is a sole owner. The properties held by West Side, as well as the properties held by Fairfield, were acquired and controlled by Willard during his marriage to Alicemae. Upon their divorce, the Court of Common Pleas, Division of Domestic Relations, Butler County, Ohio, divided the property equally between them. Any claim Alicemae acquired to the property was through her marital rights which were valued to be equal to one-half the value of all property. Therefore, any property transferred by Willard to Alicemae was in satisfaction of her marital rights. Upon the ruling of the Court in the judgment of divorce the satisfaction of Alicemae's marital rights became Willard's legal obligation. It is well settled that where a corporation instead of making a distribution to a shareholder pays a debt of such shareholder, such transaction shall be treated as if the corporation *402 made a distribution to its shareholder who then utilizes such distribution to satisfy his debt. Wall v. United States,164 F.2d 462, 464 (4th Cir. 1947); Fibel v. Commissioner,44 T.C. 647 (1965). Willard was the sole shareholder of West Side and its assets were used to satisfy Willard's legal obligation to Alicemae. Accordingly, West Side's assets were constructively transferred to Willard. Willard posits that he is not a transferee of West Side because he did not receive any of the corporation's assets. Although Willard did not physically receive any of West Side's assets, said assets were transferred in satisfaction of his legal obligation to Alicemae. The Court of Common Pleas, Division Domestic Relations, ruled that Willard must transfer to Alicemae one-half of the property he acquired during their marriage in satisfaction of her marital rights. The property chosen by the Court to be transferred to Alicemae included the two parcels of real property held by West Side. Willard refused to execute a deed which would facilitate the transfer of these properties to Alicemae, after which the Court caused the property to be transferred to her. *403 We find no difference here because of the Court imposed transfer. The additional step of the Court's involvement in bringing about a particular result does not alter the substance of the transaction. In the instant case West Side's assets were transferred in satisfaction of Willard's legal obligation. The purpose of the transfer remains unchanged whether the transfer was voluntary or enforced by court order. Willard has received the same benefit from West Side's assets as if they had been physically transferred to him. Consequently, we find that the transfer of West Side's assets constituted a constructive transfer to Willard. At the time West Side's assets were constructively transferred to Willard, the corporation was indebted to the Internal Revenue Service for outstanding tax liabilities. Moreover, on February 4, 1982, approximately 19 months after West Side's assets were transferred, Willard signed a Form 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, on behalf of the corporation for the years 1970, 1971, 1972, 1974 and 1975. [6]
*404 The two parcels of real property held by West Side were the major assets of the corporation, in addition to a bank account with a small balance. These assets were constructively transferred to Willard without fair consideration. This transfer rendered West Side insolvent and because the corporation is now dissolved it is meaningless for respondent to try to collect the outstanding deficiencies from the corporation. Accordingly, we hold that petitioner, Willard Shartle, as a transferee of West Side's assets, is liable for said corporation's tax deficiencies, plus interest, as set forth in the notice of liability. We further hold that Alicemae is not a transferee of West Side. The foregoing analysis applies equally to support a conclusion that petitioner, Willard Shartle, is liable as a transferee for the corporation's additions to tax as set forth in the notice of liability. However, before we can so hold, we must decide whether West Side itself is liable for these additions because Willard contends that it is not. Section 6651(a) provides for an addition to tax in the amount of 5 percent of the tax required to be shown on the return for each month (or part thereof) during *405 which the failure to file the return continues, but not to exceed 25 percent in the aggregate. The addition can be avoided if the taxpayer establishes that the failure to timely file was due to reasonable cause and not due too willful neglect. Whether reasonable cause existed for West Side's failure to meet the due date for the return in question is a matter of fact to be determined from all the surrounding facts and circumstances. Fleming v. United States,648 F.2d 1122, 1124 (7th Cir. 1981); Ferrando v. United States,245 F.2d 582, 587 (9th Cir. 1957). A taxpayer has reasonable cause for delay of filing his tax return if he exercises ordinary business care and prudence and nevertheless is unable to meet the due date. Section 301.6651-1(c)(1), Proced. & Admin. Regs. Willard was the sole operator and in control of the financial affairs of West Side. He had knowledge of and responsibility for the preparation and filing of the Federal tax returns for the corporation. Willard failed to have Federal corporate income tax returns filed for West Side for the taxable years 1970, 1971, 1972, 1974, and 1975. Petitioner gave no explanation for his failure *406 to do so. Consequently, we sustain respondent's determination under section 6651(a). Section 6653(a) provides for an addition to tax in the amount of 5 percent of any underpayment if any part of the underpayment "is due to negligence or intentional disregard of rules and regulations * * *." Petitioner has the burden of proving that West Side's underpayment of taxes was not the result of its negligence or intentional disregard of these rules and regulations. Courtney v. Commissioner,28 T.C. 658, 669-670 (1957). Negligence, within the meaning of section 6653(a), is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985). With respect to the failure of filing corporate tax returns for West Side, petitioner has not demonstrated to this Court that he took the standard of due care that a reasonable and ordinarily prudent person would have taken to ensure the filing of such returns, nor was any explanation given for the failure to file. Based on these facts, we sustain respondent's determination for the additions to tax under section 6653(a). *407 Under section 6655 a corporation is subject to addition to tax where such corporation has failed to pay estimated income tax. Petitioner has the burden of disproving respondent's determination as to an addition to tax under section 6655. Rule 142(a). Because petitioner has made no effort to introduce evidence to disprove respondent's determination, we sustain such determination. Based on the foregoing, Decision will be entered for the respondent in docket No. 11189-86. Decision will be entered for the petitioner in docket No. 11529-86.
Footnotes
1. These two cases were consolidated for purposes of trial, briefing, and opinion. Petitioner Willard H. Shartle did not file a brief in this case. ↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Alicemae and her ex-husband lived with Willard's parents from the time of their marriage until sometime in 1970. The two daughters born of the marriage were also members of this household. ↩
4. At trial Emma Shartle, in response to a question asked on cross-examination, stated she was 90 years old and respondent's attorney was trying to confuse her. Emma stated she would tell only the good things about Willard and his involvement with the corporations. ↩
5. Ohio law required at least three incorporators for the formation of a corporation at the time these corporations were formed. See Sec. 1701.6, Ohio Rev. Code Ann.↩ (Anderson 1953). 6. Although we do not hold that Willard, through the execution of the Form 870 on behalf of West Side Clinic, is bound by pure contractual theory to be liable for the outstanding tax deficiencies of West Side, we look upon it as an indication of his knowledge of such existing debts and the level of his involvement with the operations of the corporation. ↩